JOHN A. LYLE

*v.*

CHARLES M. JACQUES *et al.*

*Filed at Ottawa November 10, 1881—Rehearing denied March Term, 1882.*

1. TAXATION—*who is liable for taxes as owner.* Where commission merchants were to furnish money to country dealers with which to purchase grain, who were to pay ten per cent interest for the use of the money until it was paid, and the commission merchants were to receive one cent a bushel as commission in handling and selling the same, the country dealers to pay all expenses, and have all the net profits, and bear the losses, if any, and to turn over the grain, when bought, to the agent of the parties advancing the money: *Held,* that the transaction between the two firms was a loan of money by the former, with a security on the grain for its repayment, and that

the grain belonged to the latter firm, and was properly assessed and taxed to them.

2. SAME—*mistake in owner's name will not vitiate tax.* An error or informality in assessing a lot of grain belonging in fact to a firm, in the name of C. M. Jacques & Co. instead of Jacques Bros. & Co., the proper name, the two firm names representing really the same persons, will not invalidate the tax, or furnish any ground for enjoining its collection from the firm. Equity will not interfere because of mere errors in the assessment, where the tax is authorized by law, and is upon property subject to taxation.

3. SAME—*enjoining sale of individual property for taxes due from firm.* A partnership firm can not enjoin the collector from selling the individual property of one of its members for the taxes due from the firm. That is a matter for the individual partner himself to complain of, and does not injuriously affect the firm.

4. SAME—*notice of sale—as to the place.* A collector's notice of the sale of property for taxes described the property, which was bulky and not movable readily, as standing on a certain fractional quarter section, and that the sale would be at R., in W. county, and the evidence showed that the quarter section was within the limits of the town of R., which was east and west one mile in length, and north and south one-half mile in extent, and containing 1000 inhabitants: *Held,* that from the character of the property the reasonable understanding from the notice was, that the sale was to be at the place in R. where the property was described as standing.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Mr. WALTER STAGER, for the plaintiff in error:

The property was assessed to the complainants by their proper name. The proof shows they transacted business under several firm names, including that used by the assessor.

Equity will not enjoin a tax for errors in its assessment or levy, or proceedings to collect. *C., B. and Q. R. R. Co.* v. *Frary,* 22 Ill. 36; *Merritt* v. *Farris,* 22 id. 312; *Metz* v. *Anderson,* 23 id. 469; *Cook Co.* v. *C., B. etc. R. R. Co.* 35 id. 465; *Vieley* v. *Thompson,* 44 id. 13; *DuPage Co.* v. *Jenks,* 65 id. 286; *Swinney* v. *Beard,* 71 id. 30; *Andrews* v. *Rumsey,* 75 id. 600; *Huck* v. *C. and A. R. R. Co.* 86 id. 360; *Town of Ottawa* v. *Walker,* 21 id. 610; *Munson* v. *Minor,* 22 id. 602; *Drake* v. *Phillips,* 40 id. 393; *Munson* v. *Miller,* 66 id. 383;

*Village of Nunda* v. *Chrystal Lake,* 79 id. 314; *Evans* v. *Gage,* 1 Bradw. 206.

Since 1873 the statute has provided that no error in the tax list, in any of the proceedings connected with the assessment, levy or collection of taxes, not affecting the substantial justice of the tax itself, shall vitiate or affect the tax, etc. Rev. Stat. 1874, 889, sec. 191. See *Buck* v. *People,* 78 Ill. 566; *Chiniquy* v. *People,* 78 id. 575; *Thatcher* v. *People,* 79 id. 606; *Fisher* v. *People,* 84 id. 496; *Moore* v. *Fessenbeck,* 88 id. 423; *Purrington* v. *People,* 79 id. 13; *Andrews* v. *People,* 84 id. 35; *Union Trust Co.* v. *Weber,* 96 id. 351; *Beers* v. *People,* 83 id. 493.

Part of the property assessed—the cribs—it is admitted, belonged to the complainants. The cribs and corn were assessed together. They should, before suing, have tendered the taxes due on the cribs. *O'Kane* v. *Treat,* 25 Ill. 562; *Taylor* v. *Thompson,* 42 id. 17; *Briscoe* v. *Allison,* 43 id. 296; *Allen* v. *Peoria, etc. R. R. Co.* 44 id. 90; *Huck* v. *C. and A. R. R. Co.* 86 id. 360; *Wilson* v. *Weber,* 3 Bradw. 133; *State Railroad Cases,* 92 U. S. 575.

If part of the property levied on is the separate property of some person other than the complainants, such fact furnishes no ground for enjoining the sale of such property at the suit of complainants. *DuPage Co.* v. *Jenks,* 65 Ill. 275.

Even conceding that such property belongs to a member of the firm of Jacques Bros. & Co., that does not help their case. Complainants have sued only as a firm, and can not litigate matters concerning only an individual member of the firm. *Lawson* v. *Kolbenson,* 61 Ill. 417.

We submit that the notice of the sale is sufficient. As to the time, it is in the language of the statute, and this is all that is required. *Burr* v. *Borden,* 61 Ill. 392.

Considering the size of the village of Rock Falls, the notice is not so indefinite as to place, that any harm would be likely to result therefrom. Conceding the notice to be defective as

to time and place of sale, that would give the complainants no standing in equity. *Finnegan* v. *City of Fernandina*, 15 Fla. 379.

Messrs. BENNETT & GREEN, and Mr. C. L. SHELDON, for the defendants in error:

The corn was improperly assessed to C. M. Jacques & Co., as the same was not then owned and never had been owned by any such firm; neither had the assessor any reason for mistaking this firm's name for that of Jacques Bros. & Co., if the corn was properly assessable to them, because, as shown by the testimony, the use of the name C. M. Jacques & Co., as a mode of signing grain checks, was not adopted until the September after the assessment. Cooley on Taxation, 279, note; *People* v. *Whipple*, 47 Cal. 591.

The corn was turned over to Stevens, Deane & Co. before May 1, 1879, and on that day was in the charge of their agent, whose duty it was to list it. Rev. Stat. 859, p. 10.

The assessor had no right, even on the supposition the cribs were personal property, to assess them against C. M. Jacques after he had made out his list and delivered it to the assessor, and it had been received by him without objection, unless after notice to Jacques that he proposed so to increase his assessment. Cooley on Taxation, 268; *Cleghorn* v. *Postlewaite*, 43 Ill. 428; *Darling* v. *Green*, 50 id. 424; *McConky* v. *Smith*, 73 id. 313.

The collector levied his warrant upon the corn-cribs, which were fixtures, and could not be sold by distress separate from the land or the leasehold estate in the same. Ewell on Fixtures, 362; *Reynolds* v. *Shuler*, 5 Cow. 323; *Conklin* v. *Foster*, 57 Ill. 104.

The machinery of the elevator, connected as the horse power was, can not, as between the owner of the freehold and a creditor or tax collector, be taken on execution or distress. Ewell on Fixtures, 360, 353.

In tax sales all the statutory requirements in relation to notice should be strictly observed. Cooley on Taxation, 304, 563.

And having disregarded the statutory provisions on that subject, the collector became a trespasser *ab initio.* Cooley on Taxation, 304. 563.

Mr. Justice Sheldon delivered the opinion of the Court:

In 1879 the assessor in the town of Coloma, in Whiteside county, assessed certain corn-cribs and corn contained therein, upon which assessment the county clerk extended the tax, and on the non-payment thereof John A. Lyle, the collector of said town, levied his warrant for the collection of the tax on certain property as the property of C. M. Jacques & Co., and advertised the same for sale. The complainants, Charles M. Jacques, John M. Jacques, Rufus H. Sheldon, and Rufus H. Sheldon, Jr., under the firm name and style of Jacques Bros. & Co., filed their bill to enjoin the sale of the property levied upon, and the collection of the tax. The circuit court decreed in favor of the complainants, and the defendant brings the case here on writ of error.

The main ground upon which relief is asked is, that the property assessed belonged to Stevens, Deane & Co., and should not have been assessed to complainants.

It appears that Stevens, Deane & Co. were grain and commission merchants, doing business in Chicago, and Jacques Bros. & Co. were a firm in the grain and stock business at Rock Falls, Whiteside county; that the corn in question was purchased by Jacques Bros. & Co. with money furnished to them by Stevens, Deane & Co., in pursuance of an arrangement previously made, whereby the latter were to furnish money to purchase corn, and Jacques Bros. & Co. were to pay ten per cent interest for the use of the money until it was repaid. Besides this interest, Stevens, Deane & Co. were to receive one cent a bushel as commission in handling and selling the

grain.   Jacques Bros. & Co. were to pay all expenses, and
have all the net profits, and bear the losses, if any, on the
sale of the corn.   The corn was to be turned over to Mr.
Nance, a banker at Rock Falls, and Stevens, Deane & Co.
were to have possession of it.   Mr. Nance testifies that on
May 1, 1879, he held the corn in question, as custodian of
Stevens, Deane & Co.   The name of Stevens, Deane & Co.
was placed on the cribs.

The transaction between these two firms, as it is thus pre-
sented, was a loan of the money with which the corn was
bought, to Jacques Bros. & Co., and a security upon the corn
for the repayment of the money, with interest.   It was the
corn of the complainants, subject to the lien on it of Stevens,
Deane & Co. for the repayment of the money they advanced.
Under this arrangement, too, between the two firms, this tax,
would be an item of expense, with regard to the corn, which
it would be for the complainants to pay,—it would go in
reduction of the net profits which they were to receive, and
they come unfavorably into a court of equity asking to have
the tax shifted from themselves to Stevens, Deane & Co.
There is no equitable ground of complaint that the assess-
ment was made to the complainants.

It is said that the firm name of complainants is Jacques
Bros. & Co., and that the assessor erred in assessing the
property to them by the name of C. M. Jacques & Co.   It
appears that in doing their business complainants have used
the three several names of Jacques Bros. & Co., C. M. Jacques
& Co., and J. M. Jacques & Co., the explanation being that
they kept separate accounts with their banker in doing their
grain and stock business, and that in drawing checks different
names were used to distinguish the accounts.   Complainants
claim that after September, 1879, they drew their grain checks
in the name of C. M. Jacques & Co., and before that time in
the name of J. M. Jacques & Co. or Jacques Bros. & Co.
only.   The assessor testifies that about the 1st of June, 1879,

he informed C. M. Jacques that he had assessed the corn to C. M. Jacques & Co.

It was early declared as the rule in this State, that equity will not interfere, by injunction, to restrain the collection of taxes because of errors in their assessment, where the tax is authorized by law, and it is assessed upon property subject to the tax, *(Chicago, Burlington and Quincy R. R. Co* v. *Frary,* 22 Ill. 34,) and this general rule has ever since been followed. Besides, it is a provision of the statute that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." Rev. Stat. 1874, p. 890, sec. 191.

The three different names here, Jacques Bros. & Co., J. M. Jacques & Co., and C. M. Jacques & Co., all mean the same— these complainants. There is no pretence that the tax or the assessment respects or concerns any other person than these complainants, and Stevens, Deane & Co. The tax is a just one against the complainants, and making the assessment to them by the name of C. M. Jacques & Co., instead of Jacques Bros. & Co., creates no doubt that complainants were the persons intended, and is not a thing that affects the substantial justice of the tax itself, and at most is but an error in the assessment of such kind that, under the provision of the statute above cited, does not vitiate or affect the tax or assessment, and is no ground for equitable interference with the collection of the tax.

The bill states that some of the property levied on is the separate property of Charles M. Jacques. This we conceive furnishes no ground for enjoining the sale of such property at the suit of complainants. It is a matter for the individual partner himself to complain of, and not these complainants, who sue only as a firm. The mere statement of the bill, that the horse-power—the property of Charles M. Jacques—was

in the possession of, and under the control of, complainants, we do not regard as showing that they had any substantial right in the property.

Some point is made in the argument that the corn-cribs were buildings situated on leased ground, and which were, for the purposes of taxation, real estate, and were not taxable in the town of Coloma as personalty, neither as realty, separate from the land,—that the corn-cribs were fixtures, and could not be sold by distress separate from the land or the leasehold estate in the same, and that the horse-power levied on by the collector was fastened to a large elevator building with iron bolts, and was a fixture, and could not be removed and sold in this proceeding,—which point we do not notice further, as the bill makes no case of such kind.   The allegation of the bill in such regard is simply that the said corn-cribs and separator are the property of, and in possession of, Jacques Bros. & Co., and that the said horse-power, rod and levers are the property of Charles M. Jacques, but in the possession and under the control of complainants, and are a portion of the machinery used by complainants in running an elevator at Rock Falls, and that the separator is run in connection with the elevator, and that the removal of the horse-power and separator would irremediably injure complainants, by the stoppage of the elevator.   These allegations, we consider, make no case for the consideration of such question of fixtures as is presented in the argument of appellee's counsel.

It is objected that the collector's notice of sale is defective, in that it does not name the place where the sale of the property would take place.   The notice describes the property as standing on the north-east fractional quarter of section 28, describing it, and that the sale would be at Rock Falls, in Whiteside county.   The evidence shows the north-east fractional quarter of said section 28 to be within the corporate limits of Rock Falls, and Rock Falls to be in extent one mile east and west, and one-half mile north and south, containing

1000 inhabitants.   From the character of the property, the bulk of it not being movable, the reasonable understanding from the notice would be that it was to be sold at the place in Rock Falls where the property was described in the notice as "standing." We regard the notice as sufficient.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*