THE STATE *ex rel.* GRACY, *Collector*, v. BANK OF NEOSHO, *Appellant*.

Division Two, February 13, 1894.

1. **Presumption**: OFFICER: PRIVATE PERSONS. Everyone, an officer as well as a private person, is presumed to perform his duties and obligations.

2. ———: COURTS OF GENERAL JURISDICTION. It will be presumed that courts of general jurisdiction act by right, and not by wrong, and conform their acts and doings to well settled forms, precedents and methods of procedure.

3. **Taxes**: ASSESSMENT: BANK. It is sufficient that tax assessments are made against a bank in the name under which it does business.

4. ———: ———: ASSESSOR'S BOOKS. The assessor's failure to return real and personal property in one book does not render the tax void.

5. ———: ———: ———. Nor does the fact that the assessor returns the original assessor's book, and not a copy, invalidate the tax.

6. ———: ———: JURISDICTION. When an assessor makes out his assessor's books, jurisdiction attaches, and the rest of the proceedings are directory.

7. ———: BOARD OF EQUALIZATION: EXCESSIVE VALUATION. Appeal must be taken to the county board of equalization to correct an assessment against a bank on the ground that it is excessive.

*Appeal from Newton Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

The State ex rel. v. Bank of Neosho.

Action by collector to recover certain personal taxes for the year 1889, which were assessed against the defendant bank by name. A statement or tax list, duly verified under oath, setting out the kind and value of the bank's property, etc., by H. F. Jones as president, had been returned by him in behalf of the bank to the assessor of the county for assessment. That assessment as appears from the assessor's book is as follows:

PERSONAL PROPERTY TAX BOOK OF NEWTON COUNTY, MO., FOR THE YEAR 1889, AS ASSESSED JUNE 1ST, 1888.

| Owner's Name. | [Here are columns in blank, headed for numbers, classes and values of Live Stock.] | Moneys, Notes, Bonds and other Credits. [Class 5, 6, 7, 8, 9.] Dollars. | All other Personal Property. [Class 3, 4, 10.] Dollars. | Total Valuation by Assessor. Dollars. | Total Valuation as adjusted by Co. Board of Equalization. Dollars. | Total Valuation as adjusted by State Board of Equalization. Dollars. | State Revenue. Dollars. | State Revenue. Cts. | State Interest. Dollars. | State Interest. Cts. | Co. Revenue. Dollars. | Co. Revenue. Cts. | School Tax. Dollars. | School Tax. Cts. | School Tax. No. dist. | Road Tax. Dollars. | Road Tax. Cts. | Tax. Dollars. | Tax. Cts. | Total Tax. Dollars. | Total Tax. Cts. | When Paid. Mo. | When Paid. Day. | When Paid. Year. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BANK OF NEOSHO. | | 46685 | 800 | 47485 | 47485 | 47480 | 142 | 44 | | | 213 | 66 | 474 | 80 | Neosho | | | | | 830 | 90 | | | |

The petition omitting caption, so far as necessary to quote it, is the following:

"The state of Missouri suing at the relation and to the use of J. F. Gracy, collector of revenue of Newton county, alleges that he is the legally qualified and acting collector of the revenue within and for the county and state aforesaid; that the defendants, F. J. Corpeny and H. F. Jones, are now and at the times hereinafter mentioned, copartners engaged in the business of private banking—as private bankers; and conducting their said business in the name of Bank of Neosho, at Neosho, Missouri—said Bank of Neosho being organized under and by virtue of the statutes of the state of Missouri relating to private banking; that, on the first day of June, 1888, the defendants, as such private bankers, were the owners of the following personal property, to wit:  Capital stock, net premiums, and earnings and fixtures and furniture of the aggregate value of $47,480, which was then and there subject to taxation for state, county, school and other purposes; that there was legally assessed and levied against such property for the year ending June 1, 1889, for state, county, school and other municipal purposes, the aggregate sum of $830.90; that of the taxes so assessed and levied there is now due and unpaid for state purposes the sum of $142.44, for county purposes the sum of $213.66, for school purposes in said county the sum of $474.80, amounting in the aggregate to the sum of $830.90, which said sum the defendants have failed to pay as required by law; all of which will fully appear by a tax bill hereto attached and filed with this petition, duly authenticated by the certificate of the collector of revenue within and for the county of Newton aforesaid.   That plaintiff is entitled to recover of the defendant a penalty of one per cent. per month from the first day of January, 1890, until the same shall be paid," etc., etc.

It appears that a summons was issued on this petition, but on whom served does not appear. At any rate the following answer was filed, which so far as necessary will now be quoted:

"For answer to plaintiff's petition in the above entitled action, defendant denies each and every allegation therein, except as the same may be admitted by implication in the following statement of facts, which, by way of further answer herein, the defendant avers to be true, viz.: Defendants, F. J. Corpeny and H. F. Jones state that they are engaged in the banking business. That the Bank of Neosho is engaged in the business of receiving deposits and discounting bills and notes at the City of Neosho, Newton county, Missouri. That said bank has a capital stock of $50,000, all of which was, on the first day of July, 1888, invested in a brick building in said city, bank fixtures necessary for the prosecution of said business, notes, bonds, bills, credits, and such cash on hand and on deposit in other banks, as was required by law and sound banking business principles, to enable it to meet the drafts and demands of its customers in the ordinary course of its business," etc., etc.

There is nothing in the record to show the nature of the tax list that H. F. Jones returned to the assessor, but a statement in these words in the bill of exceptions: "That is to say, a statement or tax list by H. F. Jones as president, setting out the kind and value of the bank's property, etc., under oath, with proposed deductions for taxation at equalization values."

It was agreed in a general way that the proceedings were formal and regular, except that it was shown that there was no separate or other assessment purporting to charge the defendant personally or by name otherwise than as above. Other exceptions, as to the regularity and formality of the assessment are made,

but it is not necessary to notice them more particularly just now.

The tax bill mentioned in the petition as hereto attached, etc., and authenticated by the certificate of the collector of the revenue is not to be found. At the close of the evidence on behalf of plaintiff, the defendant prayed the court to declare that under the law the plaintiff could not recover upon the evidence, on account of failure to prove valid assessment, etc., as against the *defendant*. This declaration of law being refused, exception taken and judgment rendered for plaintiff, F. J. Corpeny, for himself and codefendant, H. F. Jones, filed an affidavit and took an appeal to this court.

*George Hubbert* with *M. E. Benton* for appellant.

(1) The discrimination against personal property employed in banking, and in favor of other personal property not so employed as a necessary consequence, by the local authorities charged with the administration of the revenue law, was a palpable violation of the constitution, under which taxation is lawful only in proportion to the real value of the property taxed, and only when uniform upon the same class of subjects, and only when in pursuance of general laws for equalization and levy. Const. Mo., art. 10, secs. 3, 4; R. S. 1879, secs. 6672, 6673, 6711; 2 Desty on Tax., sec. 118, p. 642; *Tierney v. Lumber Co.*, 47 Wis. 250; *Philleo v. Hiles*, 42 Wis. 527; *Plummer v. Marathon*, 46 Wis. 163; Cooley on Tax. [2 Ed.], pp. 218, 219. (2) The failure on the part of the assessor to return the real and personal property of the county, listed and valued in one book, and the like failure to cover all of both classes of property in one tax book was all in clear disregard of

positive law. R. S. 1879, secs. 6718, 6723; amended, by Laws of 1891, pp. 192, 193; R. S. 1879, sec. 6722; *State ex rel. v. Cook*, 82 Mo. 185; *State ex rel. v. Schooley*, 84 Mo. 447. (3) The lack of a duly verified copy of the assessor's book of valuations of property for taxation was fatal to every subsequent act in the line of equalizing and correcting values, levying a tax or making a tax book; for the original assessor's book could not be lawfully returned to the county court or board of equalization, nor could it serve as a basis for any levy or tax book. *Warrensburg v. Miller*, 77 Mo. 56; *State ex rel. v. Cook*, 82 Mo. 185; *State ex rel. v. Schooley*, 84 Mo. 447; *Pike v. Martindale*, 91 Mo. 268. (4) The judgment of the court below was practically an unauthorized judicial assessment, equalization and levy of a personal tax against appellants which might have been levied, if at all, against the organized joint stock or corporate body only. R. S. 1889, secs. 7610, 7626; *Bemis v. Boston*, 14 Allen, 366; *Peabody v. Com.*, 10 Gray, 97. (5) Even the petition in this case does not aver that any tax was ever assessed, levied or charged against appellants personally. The charge is that "there was legally assessed and levied against said property" the taxes sued for. It is submitted that no court, of law or equity, has power to so fix, levy, or distribute a tax charge, or liberty to ignore the exacting rule that every statutory requirement must be met and performed with strictness, as necessary precedent conditions to the collection of a tax. 3 Cush. 567, 572; *City v. Mock*, 72 Mo. 61; Cooley, Tax., pp. 259, 278, 289, 397–399.

*L. W. White* and *O. L. Cravens* for respondent.

(1) The bank of Neosho was duly organized and authorized to do business as a private bank at Neosho,

Missouri, under and by virtue·of the provisions of the statutes. R. S. 1879, secs. 921, 922. (2) The fact of such organization is duly alleged in the petition and is not denied under oath, hence it will be taken, for the purposes of this case, that such allegation is true.. Laws of 1883, p. 121. (3) In an action to recover a tax levied the defendant can not show there was inequality in the valuation by the assessor, as the board of equalization is the only tribunal that has jurisdiction to adjust over-valuation of property by the assessor. *Meyer v. Rosenblatt*, 78 Mo. 495; *Potosi v. Casey*, 27 Mo. 372; *State ex rel. v. Dowling*, 50 Mo. 134; *State ex rel. v. County Court*, 47 Mo. 594; *Ins. Co. v. Charles*, 47 Mo.· 462; *Railroad v. Maguire*, 49 Mo. 482; Cooley on Taxation [2 Ed.], p. 747; R. S. 1879, sec. 6711. (4) If it can be construed that said section requires the assessor to make·a copy of his assessment books on the first year of the biennial assessment then it is merely directory, inasmuch as it is an error not affecting any substantial right of the taxpayer and should be disregarded. It is a mere. informality for which under our curative statute, the taxes based upon the assessment, legal in other respects, will not be held invalidated. R. S. 1879, sec. 6710. (5) The making of the copies, if required, is not a jurisdictional fact and the general doctrine is that whatever the legislature might have originally dispensed with, may, when omitted, be. cured by a healing act. Besides, the failure to comply with the supposed statutory requirement is on the basis of the maxim, *de minimis non curat lex.* Welty on Assessments, secs. 232, 236; *Railroad v. Maguire*, 49 Mo. 482;. *State to use v. Dulle*, 48 Mo. 282; *State to use v. Heman*, 70 Mo. 441; ·*Glasgow v. Rowse*, 43 Mo. 479; *Wall v. Turnbull*, 16 Mich. 240. (6) Irregularity and omissions do not invalidate proceedings. R. S. 1879,

sec. 6858; Cooley on Taxation [2 Ed.], pp. 308, 310. (7) The assessment is a judicial act and if the assessment be not properly made as to the taxpayer and properly listed against him his exclusive remedy is by appeal, and the action of the assessor in listing the property in the name of the bank of Neosho as it was returned by its chief officer becomes final and conclusive on the owner of the capital stock of such bank unless regularly appealed from to the county board. *Mining Co. v. Neptune*, 19 Mo. App. 442; *Ins. Co. v. Charles*, 47 Mo. 466.

SHERWOOD, J.—As already seen, the defendant bank is a private banking institution, and the defendants Jones and Corpeny are copartners in that business, and owners at all events of the property of the defendant bank. Since it is impossible to tell from this record what was the nature and kind of return H. F. Jones, as president of the bank, made to the assessor on behalf of that institution, it will be presumed that it was properly made; that the assessor properly made out his assessment on such return in conformity to law; that the present action of the collector is also based upon the proper tax bill and is directed against the proper party defendant, and that the trial court properly rendered judgment on the tax bill sued on. All these presumptions are constantly indulged and acted on by the courts in the daily routine of their duties. And it belongs to him who alleges error in the trial court in regard to these points, to prove it; this has not been done.

The defendant bank is a *private* one organized under provisions of sections 921 and 922, Revised Statutes, 1879; but *not incorporated*, nor does it appear that its capital stock was divided into shares. This distinction between a private and a public incorporated

bank is clearly drawn in section 6692, Revised Statutes, 1879, because in the first part of that section, persons owning shares of stock in banks *incorporated* under or by any law of the United States or of this state, are not required to deliver to the assessor a list thereof; but the president of such corporation is required to deliver to the assessor such list and the names of the holders of the stock, etc. In the last part of that section, however, private bankers are only required to make return of all moneys or values of any description invested in or used in their business, which is to be *"taxed as other personal property."* And this sort of return is just the kind of return it would seem from the general statement in the bill of exceptions, that H. F. Jones made to the assessor on behalf of the defendant bank. Every one, as well a private person as an official, is presumed to perform his engagements and his duty, and this presumption will for that reason be indulged in regard to the return made by H. F. Jones to the assessor. *Lenox v. Harrison*, 88 Mo. *loc. cit.* 496, and cases cited.

This presumption is in addition to the one before mentioned; that which, in the absence of counter-vailing circumstances, holds that courts of general jurisdiction act by right and not by wrong, and conform their acts and doings to well settled forms, precedents and methods of procedure.

Section 922, to which reference has been made, in mentioning the requirements for engaging in private banking, requires that a statement be made and verified before a notary public, setting forth, *first,* the names of all persons interested in the business and the amount of the capital stock invested, and, *second,* *"the name in which the business is to be conducted."* The evident object of the latter clause, was to afford a name not only in which the business is to be con-

ducted, but also one against which assessments could be made, and taxes collected. In the case at bar, unless we repudiate all familiar and reasonable presumptions, we must presume that the name of the party defendant to this action, "Bank of Neosho," was the name selected by the parties in interest and under which the defendant bank was organized by virtue of the provisions of the sections aforesaid.

In New York, possessing no statute such as ours for the selection by a private banker of a name in which the banking business is to be conducted, it has been ruled that where a private banker did business under the general banking laws of the state in the name of "*The Pratt Bank*" by which his business as a banker could be characterized and known, he could be assessed by that name, and the warrant for the collection of the tax thus assessed, could be levied on and collected from the money or property used in the business of such banker. *Patchin v. Ritter*, 27 Barb. 34; Angell & Ames on Corp. [11 Ed.] sec. 439.

In another case in that state it is said that "when a farm is owned or possessed by a mercantile or other firm, the assessment to such firm would answer the same purpose as writing out the Christian and surname of each individual composing the firm," and this because "it designates the property to be taxed," etc. *Wheeler v. Anthony*, 10 Wend. 346.

In Illinois, possessing a statute like ours in regard to informalities in assessments not invalidating them (secs. 6710, 6858, R. S. 1879) it was ruled that a tax was valid though assessed against a firm in the name of C. M. Jacques & Co., instead of Jacques Bros. & Co., the proper name, where it appeared that the assessees represented really the same persons. *Lyle v. Jacques*, 101 Ill. 644.

Analogous rulings may be found in this state

where judgments entered merely in the firm name of plaintiffs have been held valid. *Fowler v. Williams,* 62 Mo. 403; *Davis v. Kline,* 76 Mo. 310.

In other jurisdictions, judgments against *defendants* by their firm name, have been declared sufficient. *Smith v. Chenault,* 48 Tex. 455; *Goodgion v. Gilreath,* 32 S. C. 388.

In this instance, when the defendant bank was sued, the individual defendants appeared on behalf of the bank in whose name they did business, and filed an answer to plaintiff's petition, denying generally the allegations of that petition, and then on their own part they answered, whereby they virtually admitted their ownership of the bank property, and claimed that there had been an over-valuation of it by the assessor. Taking then this virtual admission of the ownership of the bank and its property by the defendants, and presuming, as we must, that the name, "Bank of Neosho" was the name under which the bank was organized, and that it was thus the name selected by the parties interested in which the "business (of the bank) was to be conducted," and presuming, as we must, that H. F. Jones acquitted himself of his statutory duty by properly making out his return in the name "Bank of Neosho," the duty of the assessor to make out his assessment in the same name, becomes manifest, and this as appears by the record he did, and we hold his action in this regard to be correct.

Indeed it is difficult to see in what other name the assessment could have been made out. What was the form of the collector's tax bill, we are not informed by this record, but we are bound to suppose on grounds of legal presumption already stated that it tallied with the assessment which *is* preserved in the record. And as for reasons already set forth, we are compelled, in the absence of anything to the contrary appearing, to

assume that the action of the trial court on the facts before it, warranted its conclusion and judgment, that judgment must be affirmed, unless upon considerations now to be stated:

*a.* The failure on the part of the assessor to return the real and personal property of the county in *one* book, but instead returning the two original books made by him to the county court, is answered by the case of *Thomas v. Chapin,* 116 Mo. 396, in which it is held that such failure does not render the tax invalid. Indeed, under the law then in force, that of 1883, it is provided that: "In all counties * * * the assessor shall be provided with *two* books, one to be called the 'real estate book,' and the other to be called the 'personal assessment book.' * * * The 'personal assessment book' shall contain a list of the names of all persons liable to assessment, alphabetically arranged, with proper priority of vowels," etc. Laws of 1883, p. 137. This law must be construed in connection with section 6718, Revised Statutes, 1879, and so far qualifies it as to have *two* books instead of *one* delivered to the assessor.

*b.* It is complained that the assessor failed to make out and return a copy of his book of the personal property as required by section 6718, but that he returned only the original assessor's book which was used for the equalization and extension of taxes by the county clerk. In relation to these matters it may be said that they are not *jurisdictional* facts; jurisdiction had already attached in the hands of the assessor when he made out his assessment books, and therefore his subsequent omission to make out a copy or copies of the same, etc., would not defeat the previously acquired jurisdiction, but such omission would be healed by the curative powers of sections 6710 and 6858, *supra;* the rule being that where jurisdiction has attached in favor

of the assessor, then the residue of the proceedings. may generally be regarded as *directory* and within the domain of statutes which provide against mere irregularities and omissions. That is to say, that whatever the legislature could have originally dispensed with, it could provide that the omission of such matters should not be attended with invalidating consequences. This has been done in the curative acts aforesaid, which it must be observed are very comprehensive in their terms, and equivalent within certain bounds to making the law respecting assessments in a large sense *directory*, and this upon the principle that it is within the power of the legislature to declare in advance what things nonessential to the rights and protection of the citizen shall be regarded as immaterial to the validity of tax proceedings. Welty on Assessments, secs. 232, 236; Cooley on Taxation [2 Ed.], 305, 306. And the curative law may be anticipatory; "it may be a general statute for future cases, which, while marking out a course for the officers to pursue, shall at the same time declare that irregularities shall not vitiate any proceedings that shall be had under the statute." Cooley on Taxation [2 Ed.], 297, 308.

Touching this subject, to wit, "the construction of tax laws," and when they are to be regarded mandatory and when merely directory, the eminent author just cited observes: "No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers, under the revenue laws, which in no way concern himself, and make them the excuse for a failure on his part to perform his own duty. On the other hand he ought always to be at liberty to insist that directions which the law has given to its officers for his benefit shall be observed. Many eminent judges have endeavored to lay down a general rule on this subject, by which the difficulties in tax cases may in

general be solved. In one of the most recent cases in which this has been attempted, the general doctrine is stated as follows: 'There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power, or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested can not be injuriously affected. Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than that designated. But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the measure and conditions prescribed for its exercise.'

"The same rule in nearly the same terms has been laid down in other cases, and it seems a sound and just rule, and may reasonably be believed to be in accord with the legislative will in the cases to which it is applicable. All legislation must be supposed to take into account the possible, if not probable, mistakes and irregularities of officers in executing the provisions of the law, and it is hardly reasonable to infer an intent on the part of a legislative body, that a failure of administrative officers to comply with any provision made for the benefit of the state exclusively, or merely as a guide in orderly proceedings, should deprive the state of all benefit to be derived from a compliance

with other provisions that embody the main purpose and object of the law." Cooley on Taxation [2 Ed.], 283, 284, 285, and cases cited.

*Third.* Relative to that portion of the answer of the individual defendants, which pleaded excessive assessment, it is sufficient to say that, if such overvaluation did occur, an appeal should have been taken to the county board of equalization. R. S. 1879, sec. 6719; *Meyer v. Rosenblatt,* 78 Mo. 495; *Potosi v. Casey,* 27 Mo. 372, and other cases. "For a merely excessive or unequal assessment, where no principle of law is violated in making it, and the complaint is of an error of judgment only, the sole remedy is an application for an abatement, either to the assessors or to such statutory board as has been provided for hearing it. The courts either of common law or of equity are powerless to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so. And this principle is applicable to statutory boards of equalization, which are only assessing boards with certain appellate powers, but whose action, if they keep within their jurisdiction, is conclusive except as otherwise provided by law. For a merely *irregular* assessment the statutory remedy is also the exclusive remedy. It is supposed to be adequate to all the requirements of justice, and it is the party's own folly if he fails to avail himself of it." Cooley on Taxation [2 Ed.], 748, 749, 750.

As no error is disclosed by the record, the judgment should be affirmed. All concur.