## L. FRANK OTTOFY, Respondent, v. SYLVESTER P. KEYES, Appellant.

**St. Louis Court of Appeals, December 17, 1901.**

1. **Practice, Appellate:** PRACTICE, TRIAL: FAILURE TO ASK INSTRUCTIONS, EFFECT OF: PRESUMPTION: MEASURE OF DAMAGES. In the absence of any instructions given or refused it is not possible for an appellate court to ascertain what rule the court adopted by which to measure damages, the presumption is that it adopted the correct rule.

2. ———: ———: ———: EVIDENCE, PRIMA FACIE CASE: CONTRACT. And the evidence for respondent, in the case at bar, establishes at least a prima facie case, both as to the making of an express contract and the breach thereof by defendant.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

*J. M. Holmes* for appellant.

There was no substantial evidence offered in the case upon which the verdict and judgment can be supported, and, hence, the finding of the court below can be reviewed in this court. Western Brass Co. v. Metham, 64 Mo. App. 50; State v. Hayden, 141 Mo. 315; Rothschild v. Railroad, 92 Mo. 91; Williams v. Monroe, 125 Mo. 574; South St. Joseph, etc. v. Pretz, 125 Mo. 418; Bissell v. Wade, 129 Mo. 439; Dameron v. Jamison, 143 Mo. 248.

*W. B. & Ford W. Thompson* for respondent.

(1) The appellate court will not inquire into a question of fact in a law case where there is conflicting testimony, and where there is evidence sustaining the finding and decision of the court. It is like the verdict of a jury and is conclusive upon the parties, not open to any assignment of error. Holt v. Johnson, 50 Mo. App. 373; Helm v. Helm, 52 Mo. App. 615; Martin v. Nichols, 54 Mo. App. 594. (2) The presumption is that the judgment and finding of the court is correct where there are no instructions given or refused by the court upon which a review of the evidence can be had in this court. Sell v. Brettelle, 162 Mo. 373; Campbell Printing Press & Mfg. Co. v. Roeder, 44 Mo. App. 324; Garrett v. Conkling, 52 Mo. App. 654.

BLAND, P. J.—The suit is for the recovery of an attorney's fee, begun in a justice's court and was appealed to the circuit court where on a trial, *de novo,* to the court sitting as a jury, plaintiff recovered judgment, from which defendant duly appealed. It is shown by the evidence that one R. H. Cornell as a promoter, undertook to consolidate and have incorporated in one body a number of livery stables in the city of St. Louis including the stable of defendant; that Ottofy was his attorney in this scheme and prepared for him a number of option papers; that a negotiation of some character was under way between Cornell and Keyes, the defendant, in respect to these option papers, whereby Keyes was to become the owner of the options and have control in respect to the formation of the corporation; that he objected to the taking in of the Mound City stables (one of the signers to the syndicate proposition); that in the progress of these negotiations Cornell and Keyes visited the office of Ottofy and there had an interview with him. Ottofy's testimony as to what, transpired on this occasion is substantially as follows: Keyes

said he had come to make an agreement with him (Ottofy);
that he had bought Cornell's options and wanted to know what
his fee would be for services rendered Cornell; that he was
going to pay it. Ottofy then asked him if he wanted him to
carry the thing to a conclusion and incorporate the company
and that Keyes said, "Yes, I want you to tend to everything
and carry it clear through," and Ottofy then agreed to take
five hundred dollars in cash and five hundred dollars in stock
of the company for all his services; that Keyes then agreed
to pay three hundred, dollars and Cornell said he would pay
the other two hundred dollars of the cash charge and nothing
was said by either as to the five hundred dollars in stock of
the corporation; that Keyes then asked about leaving out the
Mound City stables and was told by Ottofy that it could be .
done; that Keyes then directed him to make out assignments
of the options from Cornell to him and that he did this on the
next morning, on which day Keyes telephoned him not to do
anything further until he could see him. Keyes did not call
upon him after that nor did he have any further negotiations
with him, nor were any steps taken to incorporate the com-
pany, and that he rendered no further services for Keyes.

Cornell, for the plaintiff, testified in substance that Ottofy
was his attorney and had been for many years; that he con-
sulted him in respect to the options, and that he prepared all
the option papers on the livery stables that were to be brought
into the corporation, and that he was morally bound to pay
him for his services; that he visited Ottofy's office with Keyes,
at the time referred to by Ottofy in his testimony, and heard
and took part in the conversation there had; that Keyes
wanted to know the amount of Ottofy's fee and asked him
what his fee was and after the matter was discussed between
the three of them, Ottofy said his fee would be five hundred
dollars cash and five hundred dollars stock in the corporation.
Keyes said that he would not pay more than three hundred
dollars cash payment and that he (the witness) might do as

he pleased as to the other two hundred. This remark was addressed to him in the presence of Mr. Ottofy; that before going to Ottofy's office, no definite arrangements had been made between himself and Keyes as to an assignment of the options, and the purpose of their visit to Ottofy's office was to find out the amount of his fee before coming to any final agreement; and after ascertaining the amount, Keyes agreed to pay three hundred dollars of it; that he and Keyes never had any agreement that Keyes should pay the fee due Ottofy by the witness.

On the part of the appellant, Keyes testified that an arrangement about the options had been discussed between himself and Cornell but nothing had been agreed upon; that they went together to Ottofy's office to see if such an arrangement as they had had under discussion could be perfected and leave out the Mound City stables, and that he asked Ottofy what it would cost should the deal be carried through; that Ottofy said, "I expected to make a thousand dollars out of this," and he replied that if he had anything to do with it that he would pay no such fee as that and told him distinctly not to do anything on his account unless he should have a special order from him, and that he further told him he would let him know about it, and that on the next day or the day after, he telephoned him that he could not do anything in the matter; that nothing was ever done with the scheme and that Ottofy never did anything for the witness that he had any knowledge of, and that the stables were afterwards incorporated on a wholly different plan. On cross-examination the witness said that the sum of three hundred dollars was mentioned in Ottofy's office to be paid provided the scheme went through and that he would pay that amount if he had anything to do with the scheme; that he agreed to pay it if he had authorized Ottofy to proceed in the matter.

At the close of plaintiff's case the appellant offered an instruction in the nature of a demurrer to the evidence, which

was refused, to which ruling the appellant saved an exception and now insists that the respondent's evidence fails to make out a prima facie case. According to the evidence of both Ottofy and Cornell, Ottofy was consulted by respondent in his professional capacity as an attorney and received professional advice from him as to the legality of dropping the Mound City stables from the scheme of consolidation, and, according to Ottofy's evidence, he performed actual services for appellant at his instance and request, to-wit, prepared written assignments of the options from Cornell to appellant. This evidence made out a clear prima facie case in favor of respondent for a recovery of at least a reasonable fee for his professional services and advice. No instructions were given or refused and the judgment was for the full amount sued for, to-wit, three hundred dollars with interest.

The appellant contends that there is no substantial evidence upon which the verdict of the court can be supported. The evidence of respondent tends to establish an express contract whereby appellant agreed to pay him three hundred dollars to make out assignments of the options and to prepare the necessary legal papers for incorporating the syndicated stables, leaving out the Mound City stables. His evidence tends to show that he performed a part of his contract by preparing assignments of the options and that he was prevented from performing the other obligations, to prepare papers for the incorporation, by the act of the appellant. In the absence of any instructions given or refused, it is not possible for us to ascertain what rule the court adopted by which to measure the damages. The presumption is that it adopted the correct rule. State ex rel. v. Bank of Neosho, 120 Mo. 161; McDonald v. Frost, 99 Mo. 44; State v. Brown, 75 Mo. 317; State ex rel. Read v. Weatherby et al., 45 Mo. 17. The evidence for respondent establishes at least a prima facie case, both as to the making of an express contract and the breach thereof by the defendant.

The judgment is therefore affirmed. All concur.