## MIGUEL DAVILA, PLAINTIFF IN ERROR, *v.* DAVID MUMFORD AND JESSE MUMFORD.

The statute of limitations of Texas provides in its fifteenth section, " that every suit to be instituted to recover real estate, as against him, her, or them, in possession *under title or color of title*, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards; but in this limitation is not to be computed the duration of disability to sue from the minority, coverture, or insanity of him, her, or them, having cause of action. By the term *title*, as used in this section, is meant a regular chain of transfer from or under the sovereignty of the soil; and *color of title* is constituted by a consecutive chain of such transfer down to him, her, or them, in possession, without being regular; as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing; or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of head-right, land warrant, or land scrip, with a chain of transfer down to him, her, or them, in possession; and provided, that this section shall not bar the right of the Government."

And the sixteenth section provides, " that he, she, or they, who shall have had five years' like peaceable possession of real estate, cultivating, using, or enjoying the same, and paying tax thereon, if any, and claiming under a deed or deeds *duly registered*, shall be held to have full title, precluding all claims. but shall not bar the Government; and, saving to the person or persons hav

---

*Davilá* v. *Mumford et al.*

---

ing superior right and cause of action, the duration of disability to sue arising from nonage, coverture, or insanity."

The construction of the fifteenth section is this: that although the elder title was on record, the constructive notice thereof to the holder of the junior title was · not sufficient to charge the latter with a " want of intrinsic fairness and honesty," so as to prevent the bar of the statute from running.

The sixteenth section commented on, but its meaning not definitively adjudged. ·

An act of the Republic of Texas cured whatever defects existed in the power of the commissioner who issued the grants to the defendants.

THIS case was brought up by writ of error from the District Court of the United States for the western district of Texas.

The principal question in the case was the construction of the statute of limitations passed by the State of Texas, which is discussed in the opinion of the court, and need not be stated in this place.

It was argued by *Mr. Hale* for the plaintiff in error, and submitted on a printed argument by *Mr. Ballinger* for the defendants. A cursory view only of the arguments can be given.

*Mr. Hale* cited authorities in the civil law, and then proceeded to comment on the law of Texas.

This was the state of the law when the Republic of Texas obtained its political existence, and it continued to be the rule of construction until the adoption of the common law, as a system, in 1840. The thirty-ninth section of the act of December 20, 1836, (Hart. Dig., 2375,) was merely a partial innovation, and is to be construed in reference to the still-existing rule. .

Hart. Dig., 2396.

The introduction of the common law by the act of January 20, 1840, did not introduce the English statutes, and the former law as to prescription remained unchanged up to the passage of the act of February 5, 1841.

Gautier *v.* Franklin, 1 Tex., 746. ·

This act, thus passed, under the combined influence of the common and civil law, as co-existing systems, derived its provisions in some measure from both ; and while the fourteenth

section is a rude attempt to adopt the doctrine of d͟ 'seizin, the fifteenth and sixteenth sections follow distinctions known only to the Spanish jurisprudence and to the legislation of ou͟ı Western States. Title or color of title—the *titulo justo* and *colorado* of the Spanish jurists—are not required in the English law to work a disseizin, nor do they confer a right to a shorter period of prescription. They only extend the effect of the actual disseizin to the boundaries claimed by the deed under which the entry is made, and no reference is had, therefore, to the derivation of the title or the mode of its acquisition. But in the peculiar land law of those Western States which contributed most to the settlement of Texas, a possession held under a connected title was sometimes made to confer greater privileges, and to be sufficient for prescription in a shorter term. (See in Tennessee, act of 1797, c. 43, sec. 4; in Louisiana, Code Civ., arts. 3445, 3414, 3415; Illinois, act of 1839, "to quiet possessions," etc.)

Under this new rule of limitation it was no longer indifferent to inquire into the character of the title of the possessor or the mode by which he obtained it, for both the character and the mode qualified the possession. The courts of Tennessee, Louisiana, and Illinois, while this rule continued in force, have therefore held that the occupant, claiming the benefit of this short period of limitation, must show that he had held with a just confidence in his title and an honest belief in its superiority. "Color of title," says the Supreme Court of Tennessee, "is where the possessor has a conveyance of some sort, by deed, or will, or inheritance, which he may believe to be a title. This cannot be said of any bond or entry, which only entitles the party to a conveyance hereafter. Every one knows that is not a title, and of course cannot improve under it with a belief that he is improving under a legal title."

Wilson *v.* Kilcannon et al., 4 Hay., 185.

And again: "The reason of the law is attained when we require a *bona fide* deed for land (which has been granted) to the defendant himself. It shows that he is not a trespasser, and that he took possession of the land, believing it to be his own."

Hampton *v.* McGinnis, 1 Tenn., 291.

This seems to have been the construction adopted by this court when defining "a color of title—a deed acquired in good faith."

Patton's Lessee *v.* Easton, 1 Wheat., 476.

Gregg *v.* Sayre and wife, 8 Peters, 253—4.

Andrews *v.* Mulford, 1 Hayw. N. C., 320.

The Supreme Court of Louisiana has often said, in accordance, indeed, with the direct provisions of the civil code, that a title acquired in bad faith or with a knowledge of the better title will not sustain prescription.

Reeves *v.* Towles, 10 La., 283—6.

Devall *v.* Chopin et al., 15 La., 578.

Sandoz *v.* Gary, 11 Rob., 531.

Hughey *v.* Barrow, 4 Ann., 252.

And upon this point, a reference may also be made to the nice distinctions of the French jurists.

Tropl. Prescription, arts. 918, 933.

Duranton, vol. 21, No. 386.

Merlin, Repertoire, tit. Prescription, 1, 5, 4.

And compare Cod. Nap., art. 550.

In none of the Western States, however, except in Louisiana and Illinois, is there any expression in the statutes of limitation which seems to indicate that good faith is necessary in the shorter periods of possession, and the courts of the other States have, therefore, been compelled to decline to introduce, by construction, an exception not contained in the law. The difference, in this respect, of the act of limitation of Texas, gives a greater weight to our position, since it shows an intention to require an additional requisite in the definition of "color of title," and to look for a rule rather to the principles of the civil than the common law.

This view is, if not confirmed, at least supported by the intimations derived from the course of judicial decision in Texas. In the case of Charle *v.* Saffold, (13 Tex., 94,) the question was, whether a void will was sufficient color of title, not to sustain a possession of three years under the fifteenth section, but to extend an adverse possession of ten years to the bound-

aries of the entire tract under the fourteenth section. And the court assumes that it is sufficient for this purpose, and remarks: "The object of the statute, in its longer terms, is not to settle questions in relation to good or bad faith, the right or the wrong of possession; it proceeds on other principles." (P. 112.) In Marsh v. Weir, (21 Tex., 97,) the court refuse to apply the general doctrine of Charle v. Saffold to "color of title," as defined in the fifteenth section. "The definition of 'color of title' in this section is certainly very different from that which has been given by courts to these terms; that is, 'that which in appearance is a title, but which in reality is no title.' (Wright v. Mattison, 18 Howard R., 56.) That is not the color of title defined in this section; and the statute having defined the terms, we must look to the statute for their meaning." (P. 109.) And the court, therefore, hold that a grant which had been revoked or pronounced null by the political authority was not a basis for the limitation of three years. The same position is also taken and extended in the case of Smith v. Power, (23 Tex., 29.)

It is useless, therefore, to advert to the decisions of the courts of the common-law States, which have given other attributes to a colorable title, or to the cases which have been decided in this court upon the common-law theories of adverse possession and decision. The act of limitations of Texas is based upon a different view, and requires the application of other analogies.

A portion of *Mr. Ballinger's* reply was as follows:

To ascertain what is meant by "color of title," *Mr. Hale* refers to the civil law; but the act itself is its complete expositor. Our Supreme Court say, "the statute having defined the meaning of the terms employed, we are not at liberty in construing this section to resort to other sources for their definition and meaning." (21 T., 109.) It is a direct deraignment of title from the Government; not strictly "regular;" one which purports to transfer the right, but does not in a perfect and formal manner. A patent would be title. That did not need to be expressed. But the statute, in apposition to it,

explains color of title as from the Government.   The location of a head-right certificate, land warrant, or scrip, is declared color of title.   It leaves the fee in the Government, but is a character of right to maintain ejectment, (sec. 1 same Act Lim., Hart. Dig., 3230,) and is a vested right of property.

Howard *v.* Herry, 7 Tex., 266.

Hamilton *v.* Avery, 20 T., 635.

So if the mesne conveyances are not "regular," which is at once illustrated—"as if" not registered, or only in writing, without a seal, (13 T., 131,) "or such like defect," &c.; the plain intent being to embrace any instrument purporting and intended to be a conveyance, and equitably conveying the right of the grantor, although defective in strict law.   A bond is not color of title, because it does not purport to be a transfer.   (13 T., 128.)   "Color of title" had its fixed signification in the statutes of Texas with reference to the character of the conveyance, *ex facie,* and not to its operation from extrinsic causes, or to any good faith in its holder.   The 37th section, "Act organizing inferior courts," &c., December 20, 1836, provides that any person who owns or claims land of any description, by deed, lien, or any other color of title, shall have the same recorded, &c.   The 38th section specifies the proof to be made in order to record "all titles, liens, mortgages, or other color of title."

Hart. D., 2754—5.

The 39th section is the first limitation law of Texas.   It provides that—

"Any actual settler who is a citizen of this Republic, who may have and hold peaceable possession of any tract or parcel of land under a color of title, duly proven and recorded in the proper county, for a term of five years from and after recording of said color of title or titles, his, her, or their claim, shall be considered good and valid, barring the claim or claims of any and every person or persons whatsoever," &c.

The only decision that I call to mind upon this act of limitation is Jones *v.* Menard, (1 T., 171,) in which a possession of five years after record of the junior grant was held a bar. It is true there is no discussion of the point whether the junior

grant is color of title, for the simple reason that no one thought to doubt it. In Marsh *v.* Weir, (21 T. 97,) the construction of the 15th section, act 1841, is discussed. It was held that a grant expressly revoked or annulled by the Ayuntamiento was not title or color of title, because it was then "as though it had never issued—absolutely and to all intents and purposes a nullity;" but that a junior and inferior grant, good as against the Government, "apparently valid, but liable to be avoided and annulled by some matter extrinsic of the grant," does constitute color of title. In Smith *v.* Power, (23 T., 33,) the matter is settled with the utmost precision. The Chief Justice says:

"To constitute such title or color of title, there must be a 'chain of transfer from or under the sovereignty of the soil.' This necessarily presupposes a grant from the Government as the basis of such transfer. And the grant must be effectual to convey to the grantee whatever right or title the Government had in the land at the time of making the grant. It need not necessarily carry with it the paramount title; but it must be title as against the Government, valid in itself, when tested by itself and not tried by the title of others. It must have intrinsic validity as between the parties to it, though it may be relatively void as respects the rights of third persons."

The case of Scott *v.* Rhea, (5 T., 258,) again before the court, (21 T., 708,) shows clearly that want of notice of the prior title is not an element of "title or color of title" under the statute. (And to same effect see Wheeler *v.* Moody, 9 T., 372; Horton *v.* Crawford, 10 T., 382; Castro *v.* Wurzbach, 13 T., 128; Mason *v.* McLaughlin, 16 T., 24; Williamson *v.* Simpson, Id., 444.)

The case of Christy *v.* Alford, (17 How., 601,) shows that such a construction was unheard of then in the court below and in this court. (See agreement of counsel as to facts, p. 604.) There has never been a plea of three years' limitation in Texas which did not involve this question. Should it not be considered settled that it has never even been mooted?

*Davila* v. *Mumford et al.*

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the District Court of the United States for the western district of Texas.

The suit was brought against the defendants and others to recover the possession of eleven square leagues of land, situate in what was formerly known as the county of Milam, on the right bank of the river San Andres, otherwise called Little river, where Buffalo creek and Donaho's creek enter said river, with specified boundaries.

The plaintiff gave in evidence a grant from the Government of Coahuila and Texas, within the limits of the colony of the empresarios, Austin and Williams, dated 18th October, 1833, and rested.

The defendants gave in evidence grants from the same Government of a league each, situate within the boundaries of the eleven leagues, the one to David Mumford, dated 20th March, 1835, the other to Jesse Mumford, dated 25th February, the same year; the former went into possession in the spring of 1844, and continued in the possession and cultivation of the tract down to the time of trial; the latter took possession in the year 1850, and continued the cultivation and improvement down to the trial.

The defence relied on is the statute of limitations.

The court charged that the plaintiff and defendants both claimed under titles emanating from the sovereignty of the soil; that the plaintiff's was the elder in point of date, and must be regarded as paramount, unless the defendants were protected by the statute of limitations set up in defence. That if the jury believed from the evidence the defendants had held actual adverse and peaceable possession, in their own right, for more than three years next before the commencement of the suit, under color of title, and that the plaintiff's cause of action accrued more than three years prior to the suit, the jury should find for the defendants.

The court further charged, that if the jury believed from the evidence that the defendants had held actual adverse and peaceable possession in their own right, cultivating, using, and enjoying the lands, and paying taxes thereon, and claim

ing under a deed or deeds duly recorded, for more than five years next before the commencement of the suit, they should find for the defendants.

The 15th section of the act of limitations of Texas provides, "that every suit to be instituted to recover real estate as against him, her, or them, in possession, under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards;" and provides that, "by the term *title*, as used in this section, is meant a regular chain of transfer from or under the sovereignty of the soil; and *color of title* is constituted by a consecutive chain of such transfers down to him, her, or them, in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty."

The principal ground taken against the operation and effect of the three years' limitation in the present cause is, that the elder title being on record, the defendants had constructive notice of the same at the time of the grants to them, and hence that the title is subject to the charge of the "want of intrinsic fairness and honesty" within the meaning of the statute, which it is claimed removes the bar of three years' adverse possession.

It is admitted that this clause of the statute has not yet received a construction by the courts of Texas, and there is certainly some difficulty in ascertaining the precise meaning intended by the Legislature from the phraseology used. The better opinion, we think, is, that the want of intrinsic fairness and honesty, in the connection in which the words are found, relates to some infirmity in the muniments of title, or deduction of title, of the defendant, indicating a want of good faith in obtaining it.

The statute, in defining what is intended by possession, "under title, and color of title," in order to operate as a bar within the three years, declares, that by the term "title" "is meant a regular chain of transfer from or under the sovereignty of the soil," which, as is apparent, is the case before us,

*Davila* v. *Mumford et al.*

the title of the defendants being directly from the Government; and "color of title" is declared to be "a consecutive chain of such transfer down to him, her, or them, in possession, *without being regular*, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty;" clearly referring, as we think again, to the muniments of the title, and defects therein.

To refer these words to a constructive or actual notice of an elder title would, in the practical effect of the limitation, be a virtual repeal of the statute, especially in all cases in which the elder title is of record.

A statute of limitations is founded upon the idea of an elder and better title outstanding, and prescribes a period of possession and cultivation of the land, under the junior or inferior title, as a bar to the elder, for the repose of society; thereby settling the title by lapse of time, and preventing litigation.

As it respects the five years' limitation, the objection is, that the grants were not duly registered, and hence the possession not within the 16th section of the act. The grant to David Mumford was registered on the 21st July, 1838, and that to Jesse on the 4th October of the same year.

It is insisted, however, that the registries were a nullity, on the ground that the execution of the grants had not been properly proved or acknowledged, in order to be admitted of record.

In the case of the grant to David, the recorder certifies that the deed was presented to him, proven, and duly recorded in his office the day above mentioned; and in that of Jesse, that the deed was proved for record by J. B. Chance, who made oath that he was familiar with the handwriting of the commissioner, W. H. Steele, and also of the assisting witnesses, and that he believed the several signatures to be genuine.

There is some difficulty in determining, from the various decisions of the courts of Texas upon the registry act of 1836, whether or not the certificates of proof of the grants in the present case were sufficient to permit them to registry at the

time they were filed for record. It is claimed for the defend-
ants that the recording of the grants was confirmed by the
act of 1839, which provided that "copies of all deeds, &c.,
when the originals remain in the public archives, and were
executed in conformity with the laws existing at their dates,
duly certified by the proper officers, shall be admitted to record
in the county where such land lies." This act relates to the
colonists' titles delivered to the grantee, the originals remaining
as public archives. The deeds in the present case are copies
of the originals remaining in the archives, and are certified by
Steele, the commissioner, that they agree with the original
titles which exist in the archives, from which they are taken
for the parties interested, the day of their date, in the form
provided by the law. In addition to this certificate, the copies,
which it seems are executed by the commissioner, and are
second originals, were proved before the recorder at the time
they were admitted to registry. But be this as it may, we are
not disposed to look very critically into the question of the
registry, though we cannot say the court was in error in re-
spect to it, inasmuch as the defence was complete under the
statute of three years' limitation, as already explained.

An objection has been taken that the grants of the defend-
ants are a nullity, upon the ground that Steele, the commis-
sioner, had no authority to act in that capacity in the colony
of Nashville, or Robertson, at their date. But this defect was
cured by the act of the Republic of Texas in 1841, as has been
repeatedly held by the courts of Texas. (2 Tex. R., 1 and 37;
9 Ib., 348, 372; 23 Tex. R., 113 and 234; 22 Ib., 161 and 21;
Ib., 722; 20 How. R., 270.)

The judgment of the court below affirmed.