# BRADSHAW v. STOTT.

ASSIGNMENT OF ERRORS; ADVERSE POSSESSION; EJECTMENT.

1. Failure by an appellant to assign errors in his brief is sufficient to justify a dismissal of the appeal.
2. Five elements must concur to create an estate by adverse possession; namely, that the possession should be actual, exclusive, open and notorious, hostile to the true owner, and continuous for the period of limitations.
3. An instruction to the jury in an action of ejectment that their verdict should be for the plaintiff, if they believe from the evidence that the parties under whom he claims were for twenty years in continuous, open and notorious possession of the lots of ground sought to be recovered, claiming them as their own, is erroneous, as excluding the elements of actuality and exclusiveness of possession.

No. 301. Submitted October 2, 1894. Decided December 3, 1894.

HEARING on a bill of exceptions by the defendants in an action of ejectment. *Judgment reversed.*

The FACTS sufficiently appear in the opinion.

*Mr. Henry Wise Garnett* and *Mr. D. S. Mackall* for the appellant.

*Mr. J. J. Darlington* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit in ejectment instituted by the appellee, Charles G. Stott, as plaintiff in the court below, to recover from the appellants, as defendants below, three contiguous lots of ground in the city of Washington, designated as lots 16, 17 and 18, in square 1018, from the possession of which he claimed to have been unlawfully evicted by the defendants on October 30, 1891.

Additional to the count for the recovery of possession of the specified property, there was a count for *mesne* profits,

as authorized by existing law. But there was no verdict upon this count, and it seems to have been abandoned.

Upon a plea of the general issue and a trial by jury, there was a verdict for the plaintiff, and judgment thereon in his favor; and from that judgment the defendants have prosecuted the present appeal.

The plaintiff's title, as it appeared at the trial, was one by adverse possession, based upon a tax deed from the former corporation of Washington. It does not appear where the record title is. The defendants do not seem to have claimed it. The testimony on their behalf discloses no claim whatever of right on their part, and is substantially confined to an attempt to controvert the continuity of possession claimed by the plaintiff and those under whom he held.

The three lots in controversy, together with four other lots in the same square, in the original division of lots in the city of Washington, had been assigned to one George Walker. For alleged default in the payment of taxes assessed against George Walker's heirs, all these seven lots, together with other lots in other squares, were sold by the corporation of Washington; and one George Collard became the purchaser. Under date of January 1, 1822, Collard received a deed from the corporation in pursuance of his purchase. The plaintiff offered this deed in evidence to show the color of title under which his adverse possession began; and the defendant objected on the ground that the deed was void, the preliminaries upon which it purported to be based not having been shown. The objection was overruled, and exception taken.

This was followed by the introduction in evidence of a deed from George Collard to George Adams, a deed from George Adams to Adam Lindsay, testimony tending to show that Adam Lindsay's wife was his heir at law; proof that Mrs. Maria A. Lindsay, wife and widow of Adam Lindsay, subsequently intermarried with one Edwin Waterman; a deed from Edwin Waterman and Maria A. Waterman, his wife, to Charles Stott, dated May 17, 1853, and a deed from

Charles Stott to Charles G. Stott, the plaintiff in the cause. Objection was taken to each and all of these deeds, on the ground that they were all based on the original tax deed to Collard, and like it were null and void. But the objection was overruled, and exception taken.

Testimony was then introduced tending to show continuous occupation of the three lots in question under these several deeds from the year 1840 to the year 1874—first by Adam Lindsay until his death, which occurred in 1844; then by his widow until the sale to Charles Stott in 1853, and then by Charles Stott down to the year 1874. The occupation attempted to be shown consisted both of enclosure and cultivation.

It appears that at first the two adjacent squares, Nos. 1017 and 1018, were included within one fence, there being at the time no street laid out between them; and that afterwards the three lots in suit were contained within one enclosure. It also appeared that, although the previous deeds had comprised more property than the lots in question here, only these three lots were included in the deed from Mrs. Waterman in 1853 to Charles Stott. At least, such is the inference from the record before us.

The testimony for the defendants, as already stated, did not seek to show any title in themselves; and so far as we can infer from the record, they are mere trespassers. Their effort was to controvert the proof of continuous possession, occupation and enclosure adduced on behalf of the plaintiff. They sought to contradict one of their own witnesses by confronting him with an affidavit which he was alleged to have made; and to a ruling of the court on this point exception was taken, but this exception apparently has been abandoned, for it has not been referred to either in the brief or in the oral argument.

One instruction was asked on behalf of the plaintiff, which was granted, and one on behalf of the defendants, which

was refused; and exceptions were duly noted to both rulings. The instruction granted on behalf of the plaintiff was as follows: "If you believe from the evidence that the parties under whom the plaintiff claims were for twenty years in continuous, open and notorious possession of the lots of ground sought to be recovered in this action, claiming them as their own, your verdict should be for the plaintiff."

The instruction requested on behalf of the defendants, and which was refused, was the following: "In order to enable the plaintiff to recover in this case the jury must find from the evidence that Maria A. Lindsay was the wife and heir at law of Adam Lindsay; and if the said Adam Lindsay had any blood relations then the said Maria Lindsay was not his heir at law, and unless they further believe that Charles Stott has acquired adverse possession to said property under the law."

The exception to the refusal to grant this instruction seems to have been abandoned by the defendants. No point is made of it in the brief, and none was made in argument; and it is so plainly untenable that it may be dismissed from further consideration.

The justice who presided at the trial charged the jury of his own motion. After stating that the plaintiff based his right to the property in controversy upon a claim of title by adverse possession, and that there were three different periods from which the beginning of this adverse possession might be dated, namely, the entry of Collard in 1822, the entry of the widow of Adam Lindsay in 1844, and the entry of Charles Stott in 1853, he proceeded as follows:

"It is claimed, in the third place, that whether Mrs. Lindsay . . . had this adverse possession for any appreciable time prior to 1853 or not, yet she did claim to exercise the right of ownership over the property when she conveyed to Charles Stott in 1853, and that her deed under such circumstances would constitute color of title. The court tells you that would be so if she claimed to convey

that property, by her deed, and did convey it to Charles Stott, and he entered into possession under that deed; it would constitute color of title, and his possession would be presumptively adverse; and if from 1853, the time of that conveyance, Charles Stott was in open and notorious continuous possession of this property for more than twenty years, down to and including 1873, it is sufficient to establish his title. It is sufficient for the plaintiff's case if you find that Charles Stott was in such possession for twenty years. It is sufficient if you find that Charles Stott's possession can be tacked onto the possession of the widow; or, if she was the heir at law of Adam Lindsay you can tack his possession onto that and it would be sufficient. [There should be no confusion, gentlemen of the jury, over the question as to what constitutes possession. The possession of any part of this property under this deed included within this description would be a sufficient possession of the whole, whether a continuous or unbroken fence surrounded it or not.] [The exercise of acts of ownership over the property, such as the property was susceptible of, such as its cultivation, even if there were no fence around it would be sufficient. That has been very frequently determined, and I so charge you, that entering upon the land and making improvements upon it—raising a crop and cultivating it—under color of title, is sufficient possession, if continued for twenty years, to make out a title. No fence nor the building of improvements need be made to constitute such possession, if any visible, notorious acts of ownership are exercised over the premises after entry upon them—claiming under color of right.] The entry under that old tax deed of 1822 would be an entry under a colorable right. That constitutes what is known as color of title. So, as I have already directed you, entry under the deed of 1853 from the widow of Adam Lindsay by Charles Stott, independently of any other prior right, would constitute color of title; and continuous, open, and notorious adverse possession after

that time, for twenty years, would be sufficient to make out the plaintiff's title."

The parts of this charge which we have inclosed in brackets were duly excepted to by the defendants.

Subsequently, upon a statement by the counsel for the plaintiff that he did not remember that there was any evidence of partial occupation of the lots in controversy, the court said: "That is left entirely to the jury. There is no evidence that I recall that there was any partial occupation of any one of these three lots. They were all three included in the original inclosure of part of square 1018, and were subsequently separately inclosed or not, as the evidence may indicate." An exception was also reserved to this statement. And upon these several exceptions the case is now brought here for review, the verdict and judgment being for the plaintiff.

We are compelled to call the attention of counsel for the appellants to the fact that their brief fails to comply with a rule of this court that requires the statement by them of an assignment of errors. We are left to determine by inference the alleged errors of which they complain; and we would be justified on this ground to dismiss the appeal. There should be no difficulty in complying with this requirement of the rules. We trust that it is in the present instance an oversight that will not again occur.

So far as we can conjecture what the errors are that are complained of by the appellants, they seem to be threefold: 1st. That the court below should not have admitted in evidence the tax deed issued to Collard in 1822, and the subsequent deeds based thereon; 2d. That there was error in the explanation that was given by the court below in its charge to the jury as to what constituted possession; 3d. That the law of adverse possession was not properly and sufficiently stated by the court to the jury in the instruction that was given on behalf of the plaintiff.

So far as the first and second of these assignments are

concerned, they do not demand serious consideration from us. The appellants do not seem to distinguish between *title* and *color of title.* A valid deed conveys title ; a void deed may constitute color of title. Indeed, the very expression *"color of title,"* almost of necessity implies invalidity in the instrument from which it arises. For if the instrument were valid, it would not give color of title, but title itself. Plainly the deeds to which objection was here made were admissible for the purpose of showing the color of title on which the plaintiff based his adverse possession. And similarly in regard to the acts that may constitute occupation or possession, the charge of the court in this case states nothing more than elementary law. Moreover, in this connection, there seems to be a total misapprehension on the part of the appellants as to the deed to which the court refers in the part of the charge to which exception has been taken. The deed referred to plainly is the deed from Mrs. Lindsay or Mrs. Waterman to Charles Stott, which, according to the record, comprised only the three lots in controversy in this case, and not the old tax deed from the corporation of Washington to Collard.

But a more important question arises on the instruction given to the jury by the court on behalf of the appellee, which we find repeated by the charge and nowhere modified. Under the decision rendered by the Supreme Court of the United States in the case of *Ward* v. *Cochran*, 150 U. S. 597, this instruction would seem to be insufficient. In that decision the rule is recognized and distinctly affirmed which requires that five elements should concur to create an estate by adverse possession, namely, that it should be actual, exclusive, open and notorious, hostile to the true owner, and continuous for the period of limitations (with us twenty years). The possession must be actual, not constructive ; except, of course, in so far as actual possession of a part with a claim of title to the whole may be extended by construction to include the whole. It must be exclusive in so far as

that one of several trespassers may not date the beginning of his adverse possession from the beginning of his own trespass, while there are cotrespassers holding independently of him. It must be open and not secret, visible to any one who has occasion to see the property, and therefore notorious. And it must be in derogation of the true owner's title, adverse and hostile to it, as well as uninterrupted for the statutory period.

Tested by the rule laid down by the Supreme Court, and which is the rule laid down by all the authorities, it must be conceded that the instruction in this case failed to some extent to conform to it. By that instruction the jury were told that, if they found three of the five elements existing in the plaintiff's case, their verdict should be for the plaintiff. The elements of actuality and exclusiveness of possession were left out of consideration, although perhaps the terms used in the instruction, "*claiming the property as their own*," might be regarded as implying exclusiveness, as with more assurance they may be regarded as the equivalent of hostility to the title of the true owner. But even then the jury were not told that the possession must be actual; and while there was ample testimony in the case to show that the possession in the case, if it existed at all, was actual and not constructive possession, the instruction tended to withdraw that testimony entirely from the consideration of the jury, and to make the determination of the controversy depend wholly upon their finding the existence of the other elements that go to make title by adverse possession. It is true that there seems to have been no contrariety of testimony upon this point, and, indeed, very little testimony of any kind that would warrant a verdict for the defendants in this action. But it is for the jury to determine the effect and sufficiency of all the testimony; and under the authority which has been cited we must regard as error an instruction which tells the jury in effect that they may find the existence of an estate by adverse possession if they find certain

elements existing which are not all the elements that are required by law to constitute such an estate.

For this error, and this alone—for we find no other in the record—we are constrained *to reverse the judgment rendered in the cause by the court below, with costs ; and to remand the cause ·to that court, with directions to set aside the verdict, and to award a new trial; and it is so ordered.*