## HENDERSON *v.* MANN.

---

EVIDENCE; PRESUMPTIONS; ADVERSE POSSESSION; EJECTMENT.

1. Where the existence of a condition is shown, such as the residence of a party at a given place, it will be presumed to continue until the reverse is shown.

2. Means of knowledge is the same thing in effect as knowledge itself.

3. While an ouster or disseisin of an owner of an undivided interest in land is not to be presumed from the mere fact of sole possession by a co-owner, it may be proved by such possession accompanied by notorious claim of an exclusive right.

4. Where one of several cotenants of real estate is in possession and deals with the property as absolute owner, such as knowingly encumbering it by mortgage or deed of trust, and by his acts conveying to the public the impression that he is holding adversely to his co-owners, he may acquire a good title by adverse possession.

5. While payment of taxes and appropriation of rents by one of several

NOTE.—On presumption of ouster of one tenant in common from long-continued, undisturbed possession of another, see note in 10 L.R.A.(N.S.) 185.

owners of land will not of themselves necessarily amount to an adverse claim of exclusive ownership as against his co-owners, they may amount to such a claim, when accompanied by other acts amounting to a positive denial of right on the part of such co-owners.

6. Where in ejectment to recover an undivided interest in land, the defense was that the plaintiff, one of several heirs of a former owner, her father, had been ousted by his widow and other heirs under whom the defendant claimed, and it appeared that in 1876, after the death of her father and when the plaintiff was about sixteen years of age, she left the premises at the instance of the widow and thereafter lived elsewhere in the District, and for thirty-eight years made no claim for possession or rent, or the right to live on the premises and paid no part of the taxes, while during that period the widow and other heirs remained in possession, claimed ownership, paid taxes, satisfied existing deed of trust encumbrances, placed other deed of trust encumbrances on the property and paid them, it was *held* that the trial court properly directed a verdict for the defendant.

No. 3049.   Submitted November 8, 1917.   Decided December 3, 1917.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia, on a directed verdict by the court, in an action of ejectment.                    *Affirmed.*

The Court in the opinion stated the facts as follows:

The appellant, Mary Johnson Henderson, plaintiff below, brought her action to recover possession of an undivided one-third interest in certain land located in this city. At the close of the evidence, the defendant, Isaac T. Mann, moved for an instructed verdict on the ground that the plaintiff's own testimony showed that she had been ousted by her cotenants in 1876, and that they and their grantees, of whom the defendant is one, had been in continuous adverse possession down to the time of the suit. It was agreed upon the record that there was no question of fact for submission to the jury; and thereupon the court, resolving the matter as a question of law, instructed the jury to return a verdict for the defendant.

It appears from the testimony of the appellant, a negro woman born of a slave marriage, that she lived on the premises

in dispute with one John Johnson and Barbara Johnson, whom she claimed to be her father and stepmother, respectively, and their children, until 1876, at which time Johnson died, she being then at least sixteen years of age. After his death Barbara told appellant that she "could not stay there any longer," and she went "back to mother" in South Washington, where, for *aught* that appears, she continued to reside ever since. Subsequently she did not live on the property, but visited it "every other Sunday" until Barbara married again, which "was not very long" after the death of Johnson. Appellant never received any rent or other benefit from it, and made no demand to be compensated for its use or to be accorded the right to live on it, and made no claim of any interest in it during the thirty-eight years which elapsed between the date of her exclusion, in 1876, and the institution of the suit. Neither did she pay any taxes.

On the part of the defendant there was evidence tending to show that the appellant never resided upon the premises, was never recognized by Johnson as his child, and never claimed during his lifetime to be his child. The record shows without dispute that Johnson purchased the ground in 1872 for $400, paid $50, upon the purchase price, and gave promissory notes for the residue secured by deeds of trust covering the land; that at the time of his death less than one half of the debt evidenced by these notes had been liquidated, and besides he was indebted for materials used in erecting a house upon the lot. From the time of his death until 1905 Barbara and her two children were in sole and exclusive possession of the property claiming it as their own, were understood in the neighborhood to be the owners of it, and in course of time paid off the indebtedness against it, taking a release of the trust deed to themselves. On six different occasions they, claiming to be the sole owners of the property, executed trust deeds conveying the entire title of the property to secure the payment of money borrowed. There was a partition suit, date not given, by one of the cotenants, to which appellant was not made a party, and which eventuated in a sale of the property. From the purchaser at this sale appellee deraigns his title by *mesne* conveyances.

This testimony discloses a serious dispute as to whether or not the appellant was the child of John Johnson. If she was not, then of course she was not his heir and had no right to the property in question, but by consent of the parties, as we have heretofore observed, that question was withdrawn from the jury and the case submitted to the court upon the sole consideration as to whether appellant, assuming her to be the child of John Johnson, was barred from asserting her right to the property by the adverse possession of her cotenants. Other matters are assigned as error, but this is the one question argued and the only one which we will notice, in view of the stipulation just mentioned.

*Mr. John Ridout* and *Mr. Edmund Hill, Jr.*, for the appellant.

*Mr. J. J. Darlington* and *Mr. W. C. Sullivan*, for the appellee, in their brief cited:

*Abrams* v. *Rhoner*, 44 Hun, 507; *Allen* v. *Morris*, 148 S. W. 905; *Jackson ex dem. Bradstreet* v. *Huntington*, 5 Pet. 402; *Brown* v. *McKay*, 125 Cal. 291; *Clymer* v. *Dawkins*, 3 How. 674; *De Long* v. *Mulcher*, 47 Iowa, 445; *Dobbins* v. *Dobbins*, 141 N. C. 214; *Elder* v. *McClaskey*, 70 Fed. 529, 163 U. S. 685; *English* v. *Powell*, 119 Ind. 93; *Feliz* v. *Feliz*, 102 Cal. 1; *Foy* v. *Wellborn*, 112 Ala. 160; *Golden* v. *Tyer*, 180 Mo. 196; *Gregory* v. *Gregory*, 102 Cal. 50; *Hall* v. *Law*, 102 U. S. 461; *Hart* v. *Eldred*, 264 Mo. 148; *Hogan* v. *Kurtz*, 94 U. S. 773; *Hubbard* v. *Wood*, 1 Sneed, 279; *Jackson* v. *Whitbeck*, 6 Cow. 632; *Jennings* v. *Webb*, 8 App. D. C. 43; *Johns* v. *Johns*, 93 Ala. 239; *Kimbrell* v. *Rogers*, 90 Ala. 339; *Lindsey* v. *Smith*, — Ky. —, 114 S. W. 779; *Merryman* v. *Cumberland Paper Co.* 98 Md. 223; *Morris* v. *Vanderin*, 1 Dall. 64; *Morris* v. *Wheat*, 11 App. D. C. 201; *Newell* v. *Woodruff*, 30 Conn. 492; *Owen* v. *Morten*, 24 Cal. 373; *Packard* v. *Moss*, 68 Cal. 123; *Prescott* v. *Nevers*, 4 Mason, 326; *Ricard* v. *Williams*, 7 Wheat. 59; *Rich* v. *Victoria Copper Min. Co.* 147 Fed. 380; *Rich* v. *Bray*, 37 Fed. 273; *Riggs* v. *Dooley*, 7 B. Mon. 236;

*Roberts* v. *Moore,* 3 Wall. Jr. 292; *Rudolph* v. *Peters,* 35 App.
D. C. 438; *Van Bibber* v. *Frazier,* 17 Md. 436; *Van Dyck* v.
*Van Beuren,* 1 Caines, 84; *Warfield* v. *Lindell,* 30 Mo. 272;
*Woolfrey* v. *Morse,* 19 How. Pr. 273; *Zeller* v. *Eckert,* 4 How.
289.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

While the evidence does not disclose affirmatively that the
appellant continued to live in South Washington during all the
years since she left the property, there is nothing to show that
she did not, and therefore we must assume that she did; for
where existence of a condition is shown it will be presumed to
continue until the reverse is disclosed. (*Oller* v. *Bonebrake,* 65
Pa. 338.) Living, then, in the same city in which the property
was located for more than a third of a century, she had every
opportunity to know what her cotenants were doing; and, being
mentally alert, as the record discloses, she must have appre-
ciated the significance of their conduct. If she was not aware
of all their acts, she necessarily knew enough to advise her of
the nature of their claim, and her failure for upwards of thirty-
eight years to object or take any steps to assert her right was in
effect an acquiescence on her part in the justness of the claim.
Even if she was not cognizant of their acts, she cannot avoid
their effect by pleading ignorance; since she had the opportunity
of knowing, and if she did not inform herself the fault was
hers. Means of knowledge is the same thing in effect as knowl-
edge itself. As was said by the Supreme Court of the United
States in *Broderick's Will (Kieley* v. *McGlynn)* 21 Wall. 519,
22 L. ed. 605: "Parties cannot  *  *  *  by their seclusion
from the means of information claim exemption from the laws
that control human affairs, and set up a right to open all the
transactions of the past. The world must move on, and those
who claim an interest in persons or things must be charged with
knowledge of their status and condition, and of the vicissitudes
to which they are subject."

It is urged that since Barbara Johnson was the widow of
John Johnson, the father of the appellant, her possession was

that of a widow, or at most of a tenant in common; and that, since there was nothing inconsistent between such possession and the right of the appellant, it was not notice to the latter of an adverse assertion of title; but the record does not sustain the contention. Barbara Johnson was not only in possession, but she excluded by affirmative act the appellant from possession, and through herself and her successors in title kept her out of it for at least thirty-eight years. This clearly differentiates the case from cases cited by the appellant, as the following decisions establish. "One heir may disseise his coheirs and hold adverse possession against them, as well as a stranger. And, notwithstanding an entry as heir, the party may afterwards, by disseisin of his coheirs, acquire an exclusive possession upon which the statute will run. An ouster or disseisin is not, indeed, to be presumed from the mere fact of sole possession; but it may be proved by such possession, accompanied with notorious claims of an exclusive right." (*Ricard* v. *Williams,* 7 Wheat. 59–121, 5 L. ed. 398–413; *Jackson ex dem. Bradstreet* v. *Huntington,* 5 Pet. 402–440, 8 L. ed. 170–184.) "Twenty years' possession by one of two tenants in common, accompanied with exclusive appropriation of the rents and profits, acquiesced in by the cotenant, has been held to afford the presumption of a conveyance from the party out of possession.  *  *  * " (*Zeller* v. *Eckert,* 4 How. 289–295, 11 L. ed. 979–982.) "If the cotenant is in possession, deals with the property as absolute owner, knowingly encumbers the same by mortgage or deed of trust, and by his acts conveys to the public the impression that he is holding adversely to his co-owners, he may, under such circumstances, acquire a good title by adverse possession." (*Hart* v. *Eldred,* 264 Mo. 148–150, 174 S. W. 380; see also *Allen* v. *Morris,* 244 Mo. 357, 148 S. W. 905, Ann. Cas. 1913D, 1310; *Hall* v. *Law,* 102 U. S. 461, 26 L. ed. 217; *Clymer* v. *Dawkins,* 3 How. 674–689, 11 L. ed. 778–786.) In this connection appellant also urges that payment of taxes and appropriation of rents did not necessarily prove adverse possession, and cites many authorities in support of the contention. That is undoubtedly true, but there was here much more; there was a series of acts upon the part of the cotenants

inconsistent with the idea of any intent on their part to recognize appellant's interest; they amounted to a positive denial of such interest. And when their cumulative effect is considered it inevitably forces the conclusion that the possession of the cotenants and their successors in title from 1876 down to the date of the suit was open, exclusive, and adverse under a claim of ownership. This established title in them by prescription. (*Beatty* v. *Mason,* 30 Md. 409.)

The judgment is affirmed, without costs.          *Affirmed.*