**Louise C. WELCH, Appellant,**

v.

**UNKNOWN HEIRS, Alienees and Devisees of John LIPSCOMB and John Davis, Deceased, Julia A. Banagan, Cathlyn V. Tibbs Dey, and Margaret G. Reese, Appellees.**

No. 12309.

United States Court of Appeals District of Columbia Circuit.

Argued March 10, 1955.

Decided Oct. 27, 1955.

14. Cf. Ferguson-Steere Motor Co. v. Int. Brotherhood of Teamsters' Union, 5 Cir., 1955, 223 F.2d 842.

Mr. Herman Miller, Washington, D. C., for appellant.

Mr. John F. Costello, Washington, D. C., with whom Mr. Michael F. Keogh, Mr. J. Robert Carey, Miss Helen V. Dolan and Mr. George C. Gertman, Washington, D. C., were on the brief, for appellees Reese and Dey.

Mr. George A. Finch, Jr., Washington, D. C., for appellee Banagan.

Before PRETTYMAN, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a suit by plaintiff-appellant under Section 16–1501 of the District of Columbia Code (1951) to establish title by adverse possession to the real property known as 2810 Dumbarton Avenue, N. W., in Georgetown, District of Columbia. Defendants-appellees filed counterclaims as co-tenants seeking partition and sale of the premises, and an accounting for the rents and receipts thereof. The District Court held that plaintiff had not acquired exclusive title to the property by adverse possession, and that the defendants are entitled to a partition and sale and an accounting from July 17, 1921, the date they became entitled to possession.

A summary of the facts found by the District Court follows: In 1896 one Mary Cotter died intestate as to the premises at 2810 Dumbarton Avenue, of which she was the owner in fee simple. She had originally willed this property to a son Thomas, who predeceased her. She then signed by her mark a codicil devising the property to her son David A. Cotter. The codicil was not witnessed and was not admitted to probate. On her death the legal title to the property vested equally in her three surviving children, David A. Cotter, Julia A. Banagan, and Mary Catherine Meding, as cotenants, subject to a tenancy by curtesy in her husband for his lifetime. In addition, Mary Cotter owned three other pieces of real estate in fee simple, one of which was willed to each of her three surviving children named above. The property at 2808 Dumbarton Avenue, adjacent to 2810 here in dispute, was willed to her son David. David died in 1911 and plaintiff, as his daughter and only heir, succeeded at that time to his interest in both properties. The elder Mr. Cotter (widower of Mary Cotter) died July 17, 1921, at which time the three co-tenants, plaintiff and the two daughters (her aunts), became entitled to take possession of the property at 2810 Dumbarton Avenue.

Following the widower's death plaintiff attended a reading of his will. She was there advised by his surviving (second) wife that the premises at 2808–2810 Dumbarton Avenue now belonged to her. On the faith of this statement, as the District Court found, plaintiff immediately took possession and control of the properties, and, as the only heir of David Cotter, executed a deed in trust,

covering both Dumbarton Avenue properties, to one Ellis, who immediately reconveyed the properties to her. The deeds were recorded on October 21, 1921. Since taking possession plaintiff has rented the properties to various tenants, through her real estate agents. She has received all rents and profits, and has paid all the taxes and assessments. She has kept the premises in repair, though she has made no substantial improvements. At no time, until the answers and counterclaims to this suit were filed, has any of the defendants claimed title to or possession of 2810 Dumbarton Avenue or demanded an accounting from the plaintiff.

Mary Catherine Meding, one of the co-tenants, died in 1939, leaving as her only heirs two daughters, Margaret G. Reese and Cathlyn V. Tibbs Dey, defendants herein. The third surviving child of Mary Cotter, defendant Julia A. Banagan, was adjudged incompetent in 1943 and is represented here as a defendant by a guardian *ad litem*.

In 1952 plaintiff contracted to sell the premises at 2808–2810 Dumbarton Avenue and was requested by a title company to procure quitclaims from the co-tenants. She then asked defendants Banagan and Reese to execute to her quitclaim deeds of their interest in the properties. Upon their refusal to do so, this suit was filed and the claims for partition, sale and accounting were made by defendants.[1]

The District Court took the view that the entry of the plaintiff on the property in 1921 is in law conclusively presumed to be a permissive entry on behalf of all the co-tenants, and that after her entry she did nothing which can be construed as an unequivocal ouster of her co-tenants and a conversion of her peaceful possession into an adverse possession.

■ True it is that a presumption is ordinarily drawn that the entry and possession of one tenant in common is the entry and possession of all the tenants. But such a presumption is not universally applicable. As was stated by William Howard Taft, then serving as a Circuit Judge:

"When a tenant in common, *claiming as such,* enters upon the common land, he is exercising the right which his title gives him, and his resulting possession is presumed to be consistent with his avowed title, and therefore to be the possession of his cotenants and himself. His cotenants have the right to rely on this presumption until his acts or declarations are palpably inconsistent with it. The law fully recognizes that he may oust them, but he cannot do so except by acts so distinctly hostile to the rights of his cotenants that his intention to disseise them is unmistakable. Notice of this intention must be brought home to his cotenants, but whether this must be actual, or may be constructive, it is not necessary at this point to discuss. It suffices for our present purpose to say that *the rule thus stated has no application to any case except where the possession of the person in question was avowedly begun as a tenant in common, or under a deed, which defined his title as such.*" (Emphasis supplied.) Elder v. McClaskey, 6 Cir., 1895, 70 F. 529, 538, certiorari denied, 1896, 163 U.S. 685, 16 S.Ct. 1201, 41 L.Ed. 315.

Accordingly, where one enters into overt possession of the whole claiming in entirety and severally and not as a co-tenant, his entry will amount to a disseisen or ouster of the other co-tenants. See Clymer's Lessee v. Dawkins, 1845, 3 How. 674, 689, 44 U.S. 674, 689, 11 L.

1. Defendants Reese and Dey each claim an undivided one-sixth interest in the property. Defendant Banagan through her guardian claims an undivided one-third interest. The plaintiff is conceded-ly the owner of the remaining undivided one-third interest, and she claims the whole of the property by adverse possession.

Ed. 778; Virginia Coal & Iron Co. v. Hylton, 1913, 115 Va. 418, 424, 79 S.E. 337, 339. Cf. Parker v. Sinclair, 1932, 61 App.D.C. 219, 59 F.2d 1033, certiorari denied, 1932, 287 U.S. 644, 53 S.Ct. 90, 77 L.Ed. 557.

■ Here it is undisputed that the plaintiff entered into possession of 2810 Dumbarton Avenue in 1921 claiming the whole for herself, not in subordination to the rights of her two aunts as co-tenants. As we have seen, she had been advised at the reading of her grandfather's will that the property was hers. She immediately took possession, as well as taking steps to place on record her claim to title. Since the plaintiff did not enter and take possession as a co-tenant, but did so under claim of full ownership, no presumption arises in law that her entry was a permissive entry on behalf of all the co-tenants. Instead her entry as sole owner—whether, as the District Court thought, made under the mistaken supposition that the property was entirely her own, or even if made with the deliberate purpose of appropriating it to herself—was hostile to the rights of all other persons.[2] It amounted to an ouster of her co-tenants as to the undivided two-thirds of the property not her own. As to that undivided two-thirds, she is to be regarded not as a co-tenant, but as one who entered and held adversely property owned by persons not in privity with her. The opinion of the District Judge shows that his ultimate conclusion to the contrary was based on his view as to the applicability of the ordinary presumption regarding co-tenants.

Nothing in the record suggests that plaintiff occupied any confidential or fiduciary relationship to her aunts or their children. She knew of their existence, and no doubt they knew of hers. Essentially they were strangers. She went into possession in complete disregard of their interests, but without de-

ception or even communication. There is no basis for concluding that any relationship of trust either arose or was breached. We express no opinion as to the results which might follow in such a case.

■ Where there is no privity, it is axiomatic that actual notice of the adverse occupancy is not required to be given to the record owner. The requirement is that the entry and possession must be so open and notorious that the true owner must, or should, have known of it. Cf. Parker v. Sinclair, supra, 61 App.D.C. at page 222, 59 F.2d at page 1036. As was said in Sharon v. Tucker, 1892, 144 U.S. 533, 541, 12 S.Ct. 720, 721, 36 L.Ed. 532, the possession "must be an open, visible, continuous, and exclusive possession, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but adversely to all titles and all claimants." See also Bradshaw v. Stott, 1894, 4 App.D.C. 527, 533–534; Johnson v. Thomas, supra, 23 App.D.C. at pages 150–151; McMillan v. Fuller, supra.

■ In this case, the plaintiff's entry on the property in 1921 and her possession of it thereafter for a period of 31 years were so open and notorious that constructive notice of it must be imputed to her two aunts, and to their successors in interest. The property was rental property. The plaintiff hired rental agents, placed her tenants in possession, collected rent, paid taxes, and made repairs. That she was in exclusive possession, through her tenants, and claimed the whole, would have been plain to anyone "seeking information on the subject." The District Court found that the two co-tenants, Mrs. Banagan and Mrs. Meding, had "means of knowledge" of their common interest in the property, since they both signed the petition for probate of the will and codicil of Mary

---

**2.** McMillan v. Fuller, 1914, 41 App.D.C. 384; Rudolph v. Peters, 1910, 35 App. D.C. 438; Johnson v. Thomas, 1904, 23 App.D.C. 141, 150–151, appeal dismissed, 1905, 197 U.S. 619, 25 S.Ct. 797, 49 L. Ed. 909.

Cotter and "could have known that the codicil was refused probate." In a case of this kind "Means of knowledge is the same thing in effect as knowledge itself." Henderson v. Mann, 1917, 47 App. D.C. 174, 178. The two aunts must be charged with knowledge of their legal rights in the property, including their right to take possession in 1921 upon the death of their father. And similarly they, who have always resided in Washington, must be charged with notice of the plaintiff's entry and open possession for more than the statutory period. They "had the opportunity of knowing," and if they did not inform themselves the fault was theirs. Henderson v. Mann, supra, 47 App.D.C. at page 178.[3]

We think it well to reiterate that "A great deal of indulgence has always been extended to one in the undisturbed possession of property in respect of proceedings to quiet or perfect a title that had not been assailed." Myers v. Mayhew, 1908, 32 App.D.C. 205, 212. Section 16–1501 of our Code enables one who has become vested with title by adverse possession for more than 22 years to obtain a good record title. Gwin v. Brown, 1903, 21 App.D.C. 295, 312. It, like other similar statutes, is a statute of repose, designed to prevent further litigation and to settle a title which the parties have suffered to remain unquestioned long enough to assume their acquiescence therein. Lewis v. Marshall, 1831, 5 Pet. 470, 30 U.S. 470, 476–477, 8 L.Ed. 195; Davila v. Mumford, 1860, 24 How. 214, 65 U.S. 214, 223, 16 L.Ed. 619. It is our duty to follow the underlying policy of the statute.

Since the plaintiff's possession from 1921 until 1952, a period of 31 years, was admittedly actual, exclusive, continuous, and in our view was hostile, open, and notorious, she is entitled to a decree establishing title in her by ad-

verse possession. Cf. Bradshaw v. Stott, 1894, 4 App.D.C. 527, 533–534.

The judgment of the District Court is accordingly

Reversed.

---

3. Hydas v. Johnson, 1944, 28 Tenn.App. 126, 187 S.W.2d 534, reached different conclusions from those here on somewhat similar but distinguishable facts.