McLean, Justice,
 

 delivered the opinion of the court. — This suit in chancery was brought into this court by an appeal from the decree of the circuit court of Kentucky. In their bill, the complainants charge, that Charles Willing, under whom they claim, in his lifetime, made an entry with the proper surveyor, on the 27th of December 1783, and amended the same on
 
 *305
 
 the 11th and 12th of March 1784, for 32,000 acres of land, on certain treasury-warrants, beginning 1280 poles south-west of the Lower Blue Licks, &c.; which entry *is alleged to be valid, and was carried into grant, p ^ after a legal survey had been made. The bill further states, that L Thomas Barbour had, by virtue of a void entry, obtained the legal title, elder in date than the patent to Willing, for a part of the land covered by Willing’s entry, survey and patent; and that the defendants are in possession of the land, and claim title to it under Barbour’s patent and other claims. A release of their title is prayed, &c.
 

 -The defendants in their answer insist, that Willing’s entry is void ; and other claims than Barbour’s are asserted, under which the defendants, except Marshall and Fowler, originally settled. Marshall sets up a title in himself, of elder date, under an entry in the name of Isaac Halbert, for 12,313 acres. That he afterwards purchased an interest in Barbour’s patent from Fowler, and conveyed to his co-defendants. These deeds were executed several years before the commencement of this suit. The entries unde]- which the defendants claim are, some, if not all, of prior date to Willing’s ; but their validity is contested by the complainants. In defence, an adverse possession of twenty years before the commencement of this suit, is relied on.
 

 By the pleadings, the validity of the complainants’ entry is involved, and also those under which the defendants claim. If Willing’s entry should be held good, it might then be important to examine into the validity of the defendants’ entry, which are of prior date. But if Willing’s entry should be held bad, there would be an end to the controversy ; as Barbour’s patent, under which the defendants claim, is older than Willing’s. If the title by adverse possession shall be sustained, as to all the defendants, no inquiry need be made into the validity of the respective entries.
 

 No exception is taken to joining several defendants in the same suit, who claim separate tracts of land, from distinct sources of title. This is allowed by a statute of Kentucky, passed in 1796, which was designed to lessen the expense of litigation.
 

 The statute under which the adverse possession is set up, prescribes the limitation of twenty years, within which *suit must be brought; and p g provides,
 
 “
 
 that if any person or persons entitled to such writ or writs, ^ or such title of entry, as aforesaid, shall be, or were, under the age of twenty-one years,
 
 feme covert, non compos mentis,
 
 imprisoned, or not within the commonwealth, at the time such right or title accrued or coming to them, every such person, his or her heirs, shall and may, notwithstanding the said twenty years are or shall be expired, bring or maintain his action, or make his entry, within ten years next after such disabilities removed, or death of the person so disabled, and not afterwards.” It is not pretended,' that the ancestor of the complainants was ever within the state of Kentucky, after possession of the land in controversy was taken by any of the defendants ; consequently, had he lived and prosecuted his action, the statute could not bar his recovery. But his representatives, in asserting their right, must bring themselves within the limitation of ten years from the time of his decease, if the adverse possession were taken prior to that period. It is, therefore, important to ascertain the time of Charles Willing’s death.
 

 To prove this, the following extract from the register book of burials in Christ’s Church, St. Peter’s and St. James’s, in Philadelphia, is read as
 
 *306
 
 evidence : “Burial in Christ’s church-yard, March 23d, 1788, Charles Willing.” — Signed, Albert G. Bird, clerk ; and duly certified by the bishop, &c. The clerk testifies, that the extract is truly copied from the original register-book of burials. Richard Willing, a witness, also states, that he is in possession of a family bible, kept by his deceased father, Thomas Willing, Esquire, who was very particular in making entries of the births, marriages and deaths of all his brothers and sisters and their children, and that the following entry is found in the book, in the handwriting of his father r “ Charles Willing, son of Charles and Ann Willing, died at Coventry farm, the 23d March 1788, and was interred in Christ’s church-yard.” William J aclcson, of Philadelphia, being sworn, states, that he was acquainted with Charles Willing, late of the state of Pennsylvania ; and that he died sometime in the year 1798 ; leaving by his first wife, Thomas Willing, Richard £ , Willing and *Eliza M. Willing, and by his second wife, George C. J Willing, his only children and heirs-at-law.
 

 If the ancestor of the complainants died in 1788, it is admitted, that the adverse possession cannot bar the recovery ; as possession was not taken by any of the defendants, until after that period.
 

 The entries in the register of burials, and in the family bible, are admissible evidence, in a case like the present; and if there were no other proof of the death of Charles Willing, the ancestor of the complainants, they might be considered as showing his death in 1788. But the deposition of Jackson, who was acquainted with Charles Willing, shows that he died in 1798 ; and he is identified as the ancestor, by the names of his children, stated by the witness. This statement is not contradictory to the entry in the register, or in the family bible. There must have been two persons named Charles Willing, who died at the periods stated ; but the latter was the person in whose name the title set up by the complainants originated.
 

 To bring the defence within the statute of iimititations, it must appear, that possession of the land was taken by the defendants in the lifetime of Charles Willing. Had the land descended to his heirs, before a cause of action existed, by an adverse possession, the statute could not operate against them, until they came within the state. But it appears in this case, that the adverse possession commenced prior to the decease of Willing ; and consequently, his heirs were limited to ten years from that time, for the operation of their ciaim. This was not done.
 

 By the testimony, an adverse possession by the defendants and those under whom they claim, except Marshall, for more than twenty years before the commencement of this suit, is clearly shown. John Fowler, one of the defendants, though served with process, did not answer the bill; and no decree
 
 pro confesso
 
 was taken against him, in the circuit court. Humphrey Marshall, another defendant, who answered the bill, sets up adverse possession specifically in himself. It appears from his answer, that he conveyed, long before the commencement of the suit, to his co-defendants. * , He ^conveyed to them, by deeds in fee simple, “ with covenants to J refund the purchase-money, in case of loss by any adverse claims which gives to him, as he alleges in his answer, a right to defend in his suit.
 

 That a statute of limitations may be set up in defence in equity, as well as at law, is a principle well settled. It is not controverted by the counsel for the complainants. But he insists, that the statute did not operate against
 
 *307
 
 the complainants’ title, as to the defendants in possession, until they acquired Barbour’s title. The defendants entered under titles adverse to that claimed by the complainants. It is not, in this view, a question whether these titles were paramount to the complainants, in equity or at law. They were adverse, and within the provisions of the statute ; and if the limitation had run, before the commencement of this suit, the right of entry was tolled, and no relief can be given in chancery.
 

 Whatever may have been the state of the title, as it regards the defendants, it is difficult to conceive, how the complainants could have a right which they were unable to enforce. If the elder patent vested in Barbour the legai title, and might have been set up by the defendants, before they claimed under it, to defeat an action of ejectment brought by the complainants; they might have sought relief in a court of chancery. Their entry was made prior to the emanation of Barbour’s grant; consequently, they had the right to contest the validity of his entry.
 

 The limitation act of 1809, which requires suit to be brought within seven years after an adverse possession commences, under a connected title, in law or equity, from the commonwealth, would protect the possession of the defendants. The facts of the case bring them within the provisions of this act; but it has not been set up in the answers, nor relied on in the argument.
 

 Statutes of limitation have been emphatically and justly denominated statutes of repose. The best interests of society require that causes of action should not be deferred an unreasonable time. This remark is peculiarly applicable to land titles. Nothing so much retards the growth and prosperity of a country as insecurity of titles to real estate. Labor is '^paralyzed, where the enjoyment of its fruits is uncertain ; and liti- f gation without limit produces ruinous consequences to individuals. L The legislature of Kentucky have, therefore, wisely provided, that unless suits for the recovery of land shall be brought within a limited period, they shall be barred by an adverse possession.
 

 The court are of the opinion, that the defendants, except Marshall, having brought themselves within the provisions of the act of 1796, in showing an adverse possession of more than twenty years, before the commencement of this suit, have sustained their defence, and consequently, that the bill of the complainants, as to them, must be dismissed.
 

 As the extent of the interference of Marshall’s claim, under the patents of Barbour, and Halbert and others, with Willing’s entry, does not appear from the proof in the cause, and as such proof is essential, to enable the court to determine on the respective rights of the parties ; the cause may be certified to the court below, as to him, for further proceedings.
 

 Fowler, one of the defendants, has not answered the bill; the merits of his claim cannot now be investigated. The cause, as to him also, may be sent down for further proceedings.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel: On consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby affirmed, as to all the respondents and appellees,
 
 *308
 
 except Humphrey Marshall and Fowler ; and as to him, the said Marshall, it is adjudged and decreed hy this court, that the decree of the said circuit court be and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said circuit court, for further proceedings to be had thei’ein, as to the said Humphrey Marshall, according to law and justice, and in conformity to the opinion and decree of this court; and it is further adjudged and decreed by this court, that this cause be and the same is hereby remanded to the said circuit court for further proceedings to be had therein, as to the said defendant Fowlex-, who did not answer the bill, and against whom there was no decree.