Maxwell *v.* Chapman.

530, 531.)  Under this stringent rule we can not say that the jury erred.  The evidence of recognition was of the most general and uncertain kind.  Besides, the question of the credibility of witnesses is one exclusively for the jury.  These notes were made by C. H. Toll when Sharp, who was acting in the place of Tomlinson, refused to sign them, on the ground of a want of authority.  And the plaintiff's agent, with a full knowledge of the dissolution of the firm, and of this doubt as to the power to sign new notes, surrendered up the old notes to be cancelled.

We think the learned justice overlooked the fact that there was no issue on the old notes.  The order granting a new trial is therefore vacated.

8   579
73h 604

SAME TERM.  *Before the same Justices.*

## MAXWELL *vs.* CHAPMAN.

An entry of a marriage, in a parish register, in the hand-writing of the rector of the church, whose duty it is to keep the same, is admissible in evidence to prove the marriage of the plaintiff in an action for dower; notwithstanding that for a portion of the time embraced in such register the same was in the hands of the clerk of the church and the entries were made by him.

It is no objection to the admission of such register that it was the practice for each minister of the parish to keep an account of the marriages solemnized by him, in a book kept by himself, as the marriages occurred, or soon after, and to hand in a memorandum of them to the rector, on a slip of paper, from which they were entered in the register by the rector.

In such a case the register only, and not the original book of entry, is admissible.

A register of marriages is *prima facie* evidence of the *fact* of a marriage, and of the *time* when it occurred.  And this, although there is no statute in this state regulating registers of marriages, and making them evidence.

Registers are evidence on principles applicable to this kind of testimony, without reference to any law declaring them to be evidence.

In a certificate of the proof of a deed executed in Nov. 1792, and proved in March, 1793, it was not necessary for the officer to certify that he *knew* the *subscribing witness.*

The act of the 14th of April, 1820, declaring that no deed of military bounty lands,

executed on or before the 1st of May, 1797, *shall be read in evidence*, unless the same has been acknowledged or proved in the manner directed by the act of, the 12th of April, 1813, does not apply to a deed executed in 1792, and duly proved in 1793 according to the then existing law.

THIS was an action brought by the plaintiff, Eve Maxwell, widow of Anthony Maxwell deceased, to recover her dower in the premises described in the complaint. The defendant, in his answer, denied that the plaintiff was the widow of the said Anthony Maxwell, or that he ever was her husband; or that he died at the time mentioned in the complaint. He also denied that Anthony Maxwell was seised of an estate of inheritance and possessed of the premises, in his lifetime, or that he ever conveyed the same. And the defendant claimed to be the legal owner of the premises in fee, and that he had held the same more than twenty years adversely to the title under which the plaintiff claimed; and denied that he unjustly withheld the possession. The plaintiff, in her reply, took issue upon each of the allegations in the answer, and denied that the premises had been held adversely by the defendant. The cause was tried at the Onondaga circuit in December, 1849, before the Hon. H. Gray, justice. The jury, under the direction of the court, found a verdict in favor of the plaintiff, for one undivided third of the premises described in the complaint, and judgment was entered thereon. The defendant filed a bill of exceptions, and appealed to the general term.

*B. Davis Noxon,* for the appellant.

*John Ruger,* for the respondent.

*By the Court,* GRIDLEY, J. I. The first ground, on which a new trial is sought, is an alledged error in the admission of the marriage register of Trinity Church in evidence. This was a register that has long been kept at Trinity Church, New-York, containing a record of marriages as far back as 1746, and was proved by the Rev. Doctor Berrian, who is now the rector of the church, and has been since 1830. It appeared from the

testimony of this witness, that he succeeded Bishop Hobart as rector, who succeeded Bishop Moore, who succeeded Bishop Provoost. When the plaintiff's counsel proposed to read from the register the entry of the marriage of the plaintiff to Anthony Maxwell, the defendant's counsel objected to the reading of the same, 1st, on the ground that the marriage register was for a time in the hands of the clerk of the church ; 2dly, on the ground that the entries are not original entries ; 3dly, on the ground that registers of marriages are only evidence of pedigree, in any case.

The judge overruled the objections, and admitted the evidence. The book was then received, and the plaintiff's counsel read from the register for the year 1791 several entries, among which was that of the marriage of Anthony Maxwell and Eve Platner, under date of December 17, 1791. The entry was signed "Sam'l Provoost," in his hand-writing. Immediately preceding the entries of marriages made by Samuel Provoost is the following entry : "1784. Register of marriages continued by Samuel Provoost." And then follows a column of entries made by him reaching down as late as 1800. The admission of this evidence is now relied on by the defendant on a motion for a new trial.

The first ground of objection arises out of the evidence of Dr. Berrian. He testifies that the register is under the control of the rector of the church, and that it is his duty to keep the same ; but that some of the entries appeared by the hand-writing to have been made by John Young, while he was clerk of the church, in the time of Bishop Moore. No such irregularity, however, affects the register in the time of Bishop Provoost, and cannot apply to the entries made during his administration. Without saying what the effect might be, if it were a question arising upon an entry made by the clerk, it is quite clear that the irregularity, if it be one, has no application to the entry under consideration. That is proved to be in the hand-writing of Bishop Provoost.

The second ground of objection is founded on an erroneous view of the law. Dr. Berrian testified that "since he had been rector of the church, it had been the practice for each minister

of the parish to keep an account of the marriages solemnized by him, in a book kept by himself, as the marriages occur, or soon after. The minister handed in the marriages on a slip of paper, and I entered them in the book when at leisure." And that he "entered all the marriages solemnized by himself and his assistants, in the same book or marriage register. Can not say what was the practice of Bishop Provoost." There are two answers to the objection. (1.) There is not a particle of evidence to show that this practice prevailed when Eve Maxwell was married. (2.) If it did, the register only, and not the original book of entry, is admissible as evidence. Mr. Starkie, in his Treatise on Evidence, (part 2, § 50, p. 715,) when treating of public registers of births, marriages and burials, lays down the rule in the following language: "Although the entries are first made in a *day-book,* such day-book is not evidence when the entry has been made in the register." (*See also to the same effect* 2 *Phil. Ev.* 112, 3*d Am. ed.*) This objection therefore is not well taken.

The third ground of objection assumes that the register is only evidence of pedigree, in any case. This can not be so. It is laid down in Greenleaf, (vol. 1, § 493,) that a register of a marriage is evidence of the *fact* of the marriage, and of the *time* when it was solemnized. These are all the specific objections taken on the trial, and of course all which can be made the ground of the motion for a new trial. But it was said on the argument that a register was not evidence in this state where there is no statute regulating registers of marriages and making them evidence. But that is a mistake. It is settled that registers are evidence, on principles applicable to this kind of testimony, without reference to any law declaring them to be evidence. (1 *Greenl. Ev.* 483, 484, 493. *See also Stark. Ev.* 174, *pt.* 2, § 50; 5 *Cowen's Rep.* 237; 5 *Peters,* 470.)

II. An objection was taken to the admission of the record of the deed executed by Anthony Maxwell to Jedediah Sanger, on the ground that the certificate of proof does not show that the master in chancery who took the proof *knew the subscribing witness.* The deed was executed on the 17th of November, 1792, was proved on the 25th of November, 1793, and was re-

Maxwell *v.* Chapman.

corded on the 11th of July, 1797. There was no act in force when this deed was proved, requiring the officer to know the subscribing witness, or to certify such knowledge. The first section of the act of January 8, 1794, (1 *R. L.* 210,) did require this knowledge, as to all deeds *thereafter to be executed*—but it did not prohibit the recording of such as had been already duly proved by the existing law. Another act was passed Feb. 11, 1797, which forbade the recording of any deed executed or proved after the first of May, 1797, unless the officer should testify that he knew the subscribing witness; but as this deed was executed and proved before the first of May, 1797, it might lawfully be recorded afterwards, though it should be after the passage of the last mentioned act. The deed under consideration therefore was proved according to the requirements of the law in force when the proof was made; and was recorded in violation of no law existing when the deed was recorded.

. But in 1813 the " act concerning deeds" was revived, and by the first section it was provided that " no proof of a deed should be taken unless the officer taking the same should know the person making such proof, or have satisfactory evidence that he was a subscribing witness," &c. all of which was to be inserted in the certificate. (1 *R. L.* 369, § 1.) On the 4th of February, 1814, an act was passed, forbidding any deed conveying any lands granted by this state as military bounty lands to be *recorded* if the same had been executed on or before the first of May, 1797, unless the same had been proved or acknowledged pursuant to the first section of the act last mentioned. On the 14th of April, 1820, it was enacted (*Sess.* 43, *ch.* 248, § 3,) that no deed of military bounty lands executed on or before the first of May, 1797, *should be read in evidence,* unless the same had been acknowledged or proved in the manner directed by the act of the 12th of April, 1813. The premises in question are a part of the tract known as the military bounty lands, and it must be acknowledged that the deed in question falls within the letter of the act of the 14th of April, 1820. This very question has been before the court, and the act of the 14th April, 1820, has received a construction consonant to the soundest rules of inter-

Maxwell *v.* Chapman.

pretation, though against the letter of the statute. Ch. Justice Spencer says, "It would be imputing to the legislature great violence so to construe the act as to preclude the reading in evidence the record of a deed recorded upon such proof of its execution as a former legislature deemed sufficiently authentic to warrant its being placed on the records of the county; and when thus placed there, was declared to be evidence." (*Jackson* v. *How*, 19 *Johnson*, 80. *Jackson* v. *Eaton*, 20 *Id.* 478.) The deed was therefore admissible in evidence.

III. The justice holding the circuit ruled that there was prima facie evidence of the fact of the marriage, and that there was no question of fact for the jury upon any of the points presented by the counsel. We have already seen that the register is prima facie evidence of the *fact* and *time* of the marriage; and the evidence of Charles Belden and Stephen A. Coffin leaves no doubt as to the identity of the parties. It appeared in evidence that the parties lived in Poughkeepsie; that they went to New-York to be married; that they returned, and were received in society as husband and wife, and lived together as such till the year 1825, when the husband died.

The evidence of the witnesses Belden and Coffin would be abundant to prove the existence of the marriage, but perhaps not the time. That defect, however, is supplied, and the time is fixed by the register; and the register has not been contradicted or impeached.

There were other points taken at the circuit, but they have been abandoned by the counsel here. We see no ground for granting a new trial.

                                        New trial denied.