COLLINS, Appellant, v. THE GERMAN-AMERICAN MUTUAL LIFE ASSOCIATION OF BURLINGTON, IOWA, Respondent.

St. Louis Court of Appeals, April 18, 1905.

1. EVIDENCE: Church Register. A baptismal church register kept by a parish priest in Ireland, where it is admissible in evidence by the laws and customs of the country, is admissible in evidence here for the purpose of showing the facts therein recited.

2. ———: ———: **Evidence of Birth.** Though such baptismal record was only evidence of the date of the baptism of the ·person, the date of whose birth was an issue, the court will presume that the person baptized was born prior to the date of baptism.

3. ———: ———: **Custodian of Record.** Where it was shown that the church register of a parish in Ireland had been ·kept from time immemorial by the parish priest, and that it was his duty to keep it, it was not necessary to prove that the register was in the handwriting of the officiating parish priest at the time the record was supposed to have been made, in order to admit it in evidence.

4. ———: ———: **Application for Insurance: Warranty of Age.** Where an applicant for life insurance warranted her age to be as represented, the church register of the parish in Ireland where she was born was admissible to show that she was born at a time which made her several years older than represented in the application, so that her beneficiary could not recover on the policy.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

Affirmed.·

*O. J. Mudd* for appellant.

The depositions from Ireland are private records. Defendant does not show that they were kept in compliance with any public law of Great Britain or Ireland. It is not shown that there was at the time the records were made any rule or custom of the Catholic Church requiring them to be kept. Under these conditions they lack the essential requisites of legal evidence. Haile v. Palmer, 5 Mo. 403; Childers v. Cutter, 16 Mo. 24; Morrissey v. Ferry Co., 47 Mo. 524; Moore v. Mfg. Co., 113 Mo. 109, 20 S. W. 975; 1 Greenleaf on Ev. (15th Ed.), sec. 493, p. 641, secs. 483-4, page 631; 2 Burr W. Jones on Ev. (Pony), sec. 522, p. 1163.

*W. C. & J. C. Jones* for respondent.

BLAND, P. J.—The suit is on a policy of insurance. The petition is in the usual form and alleges such facts as, if true, would entitle plaintiff to recover. The answer admitted all the allegations of the petition, except it set forth, as an affirmative defense, a breach of warranty by the insured, in that, in her application for the policy, she misrepresented and falsely warranted her age; that she warranted herself not to be older than fifty-nine years at the date of the making of the contract of insurance, when in fact she was seventy-two years of age. And it is further alleged in answer that defendant is an insurance company doing business only on the assessment plan. On the trial this latter allegation of the answer was admitted, also that the defendant was restricted and limited by its charter to conducting insurance business on the assessment plan. On the pleadings the trial was restricted to one issue, to-wit: whether or not the insured warranted her age and whether there was a breach of warranty in respect to her age. The court properly ruled that the burden of proof was on defendant, and the defendant assumed the burden.

To establish its defense defendant read the following from the application for insurance:

"Q. Applicant's age at nearest birthday? A. Fifty-nine years."

Also the following clause in said application:

"I hereby agree that the foregoing statements and answers are by me warranted to be complete and true, and are offered to said association as a consideration of the contract; and I further agree that failure to comply with any of the terms of this agreement, or with any of the conditions and agreements contained in the certificate of membership (should one be issued) then this agreement shall become null and void, and all moneys which have been paid shall be forfeited to the association, for its sole use and benefit."

Defendant also read from the proofs furnished it by plaintiff the following extract from plaintiff's affidavit:

"My name is Maggie Collins; I reside at Colorado Springs, Colorado. Anna Collins had one brother named Michael Hackett, who died in Ireland, and one sister named Mary Whalen. She left surviving her two children, Martin Collins, who was born in Ireland, and Maggie Collins, who was also born in Ireland. I (Maggie Collins) was born in Clonmel, Tipperary County Ireland. My father's name was Richard Collins, who was born at the same place. My mother's name was Anna Stacia Collins; she was born in Clonmel, Tipperary, Ireland, and was married at the same place."

Defendant then offered in evdience the affidavit of Franciska Bierman, in which he stated that he had known deceased for ten years and that she was seventy-five years old at her death.

Defendant then offered depositions taken in Ireland, to which plaintiff objected on the ground that the subject-matter of the same is " irrelevant, incompetent and immaterial, because certified copies of church records attached as exhibits are but private writings, and as such, incompetent, irrelevant and immaterial as evidence to prove any issue in this cause. That no public law of the kingdom of Great Britain or Ireland, is shown to require such records to be kept and as such reports were not required to be kept by public law at the time and place where they were made, they are but private writings, and hence incompetent. And further, it does not appear that there was at the time such records were made, any public law requiring them to be made and kept. Nor was there any custom or rule of the Catholic Church at such time and place to make and keep such records."

The objections were overruled by the court and the plaintiff excepted to the ruling of the court, and saved her exceptions.

The depositions consist of the following exhibits:

Exhibit A, headed, "Baptismal Certificate St. Mary's Parish, Clonmel." Said certificate, (exhibit A.) states and expresses upon its face:

"Name of infant, Bridget Collins; baptized twenty-eighth May, 1846; parents, Richard Collins, Annastasia Hackett. Clergyman, Rev. P. Meany. Sponsors, Michael Fahey and Margaret Houlahan."

The certificate is subscribed and attested as follows:

"I have extracted the above from the Parochial Register of Baptisms of St. Mary's and certify that the same is a true copy of the original entry. Given at St. Mary's Presbytery this fourteenth day of April, 1898.

"W. W. MEAGHER, C. C., Parish Priest.
"St. Mary's Clonmel."

Said exhibit has written on the face with pen and ink the following names:

"John C. Ryan, LL. B., Solicitor; John F. O'Brien, Town Clerk of the Borough of Clonmel; Cornelius J. Flavin; Richard J. Crean; John F. O'Brien, Town Clerk of Clonmel Borough."

Exhibit B, headed, "Baptismal Certificate, St. Mary's Parish, Clonmel." This certificate upon its face expresses the following:

"Name of infant, Annastasia Hackett, baptized twenty-ninth February, 1818; parents, Martha Hackett and Bridget Tobin. Clergyman, Rev. J. Baldwin. Sponsors, Simon Delaney and Margaret Maher."

The certificate is attested and signed as follows:

"I have extracted the above from the Parochial Register of Baptisms of St. Mary's and certify that the same is a true copy of the original entry. Given at St. Mary's Presbytery, this ninth day of March, 1898.

"C. J. FLAVIN, Parish Priest.
"St. Mary's, Clonmel."

This certificate has written on its face in ink the following names:

"John C. Ryan, LL. B., Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough; Cornelius J. Flavin; Richard J. Crean. Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough."

Exhibit C. This certificate is headed, "Baptismal Certificate, St. Mary's Parish, Clonmel," and expresses and purports upon its face in printing and ink as follows:

"Name of infant, Lucy Collins; baptized tenth April, 1849. Parents, Richard Collins and Amnastasia Hackett. Clergyman, Rev. D. Crotty. Sponsors, John Flynn and Margaret Crane."

And has in printing and writing at the bottom the following:

"I have extracted the above from the Parochial Register of Baptisms of St. Mary's and certify that the same is a true copy of the original entry. Given at St. Mary's Presbytery this fourteenth day of April, 1898.

"W. MEAGHER, C. C., Parish Priest. "St Mary's Clonmel."

And has written in ink on the face of it the following names:

"John C. Ryan, LL. B., Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough; Cornelius J. Flavin; Richard J. Crean, Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough."

Exhibit D, headed, "Baptismal Certificate, St. Mary's Parish, Clonmel," and expressed upon its face the following:

"Name of infant, Mary Annie Collins; baptized fourth May, 1848. Parents, Richard Collins and Annastasia Collins or Hackett. Clergyman, Rev. P. Meany. Sponsors, Jeremiah Keily and Ellen Ryan."

Certified and signed as follows:

"I have extracted the above from the Parochial Register of Baptism of St. Mary's and certify that the

same is a true copy of the original entry. Given at St. Mary's Presbytery this fourteenth day of April, 1898.

"Wm. MEAGHER, Parish Priest.

"St. Mary's Clonmel."

This certificate has written upon its face the following names:

"John C. Ryan, LL. B., Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough; Cornelius J. Flavin; Richard J. Crean, Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough."

Exhibit E, is headed, "Baptismal Certificate Extracted from the Baptismal Register of S. S. Peter and Paul's, Clonmel,"and expressed the following:

"Name of infant, Margaret Collins, Parents, Richard Collins, Annastasia Hackett. Baptized twenty-fifth September, 1853. Clergyman, Rev. Robert Henebry. Sponsors, Maurice Cummins, Ellen Hearn."

And has the following certificate:

"Certify the above to be correct. Clonmel, May fifth, 1898. Thomas McDONNELL, P. P. V. G., Dean of the Diocese of Waterford and Lismore."

This certificate has written on it with pen and ink the following:

"John C. Ryan, LL. B., Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough; Richard J. Crean. Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough. Wm. M. Casey, Clerk of Petty Sessions, Comr. of Affidavits, etc., John F. O'Brien, Town Clerk of Clonmel Borough."

Exhibit G, headed, "Marriage Certificate, Roman Catholic Parish of SS. Peter and Paul, Clonmel," and expresses upon its face the following:

"Name of parties married, Richard Collins, Annastasia Hackett, date of marriage, July 7, 1844. Names of witnesses, John Grady, Ellen Doheny. Name of Clergyman who officiated, Rev. Robt. Henebry" and is certified as follows:

"Clonmel, Feb. 21, 1899.

"I certify the above to be correct.

"THOMAS MCDONNELL, P. P. (Dean) V. G.

"Diocese of Waterford and Lismore."

The following names are written upon its face:

"Richard J. Crean, Solicitor; John F. O'Brien, Town Clerk of Clonmel Borough; Wm. M. Casey, Clerk of Petty Sessions, Comr. of Affidavits, etc., John F. O'Brien, Town Clerk of Clonmel Borough."

Defendant then offered the deposition of John C. Ryan who stated:

"I was sworn in as a solicitor of the High Court Judicature in Ireland in Trinity term one thousand eight hundred and ninety-three, and before that date I had taken by degree of Bachelor of Laws of Trinity College, Dublin. I practiced as solicitor in Dublin from Trinity term, one thousand eight hundred and ninety-three up to March, one thousand eight hundred and ninety-six, from which date I have practiced in Clonmel and continue to practice. I am familiar with the practice of law in Ireland and in Clonmel concerning the question of proving age, marriage, and the like by church records. The records of the Roman Catholic churches in Ireland up to the year one thousand eight hundred and sixty-three are admissible in the courts of Ireland as competent and proper evidence of the facts therein disclosed or identification of the parties therein named, if such identification, having regard to the time elapsed since such record was made, can possibly be procured. The method of proving such records is by a proper baptismal certificate, signed by one of the clergymen of the parish in which such record was kept. I beg to refer to five baptismal certificates marked 'A,' 'B,' 'C,' 'D,' and 'E,' on which I have indorsed my name and I say that said five baptismal certificates are, in my opinion, in proper form, and are admissible as aforesaid as evidence in the courts of Ireland and Clonmel to prove the facts set out in said certificates."

The deposition of C. J. Flavin, who stated:

"I am the parish priest of St. Mary's Roman Catholic Parish, Clonmel, and have been such parish priest since the thirteenth day of April, one thousand eight hundred and ninety-one, and I was parish priest of Ardfinan, in the county of Tipperary, for eight years prior to my appointment to Saint Mary's Parish aforesaid. I am a Roman Catholic Priest for the past forty years. It is and has been the invariable practice of the Roman Catholic Church to keep a Register of Baptisms and Marriages, and such register is in the custody of the Parish Priest of the parish to which the register belongs. I beg to refer to the Baptismal Certificates, marked respectively 'A,' 'B,' 'C' and 'D,' on which I have written my name at the time of swearing thereof, and I say that the said certificates were copied from the Register of Baptism of St. Mary's Parish, Clonmel, which register is in my custody and has been kept in the usual way. The reverend William Meagher, by whom the certificates marked 'A,' 'C,' and 'D,' were signed, is my curate, and I know his handwriting, and I say that said three last mentioned certificates were signed by him, and these as well as the certificate marked 'B,' which is signed by me, are in each case true and correct copies of the original entries in the said Baptismal Register. I knew the Reverend P. Meany, Reverend J. Baldwin and the Reverend D. Crotty, the officiating clergymen mentioned in the said several certificates, who are all now dead, and I am aware that they were in their lifetime officiating clergymen in the Parish of Saint Mary's aforesaid."

The deposition of R. J. Crean, who stated:

"I was sworn in as solicitor of the High Court of Judicature in Ireland, in February, one thousand eight hundred and eighty-seven. I began to practice in Clonmel on the seventeenth of March, one thousand eight hundred and eighty-seven, and I have since and am still practicing as a solicitor in Clonmel. I am familiar with the practice of the law in Ireland and in Clonmel

concerning the question of proving births, baptisms and marriages, and the like by church records. In religion I am a Roman Catholic. I am aware of my own knowledge that it is and has been the invariable pratice of the Roman Catholic Church to keep registers of baptisms and marriages and I am also aware that it is the duty of the clergymen officiating on such occasions to make an entry in such registers of the ceremony performed by him. I say of my own knowledge that it is almost the invariable practice of the Roman Catholic Church in Ireland to have the ceremony of baptism performed within a week or ten days from the date of birth. As a lawyer, I say that parish registers of baptisms, marriages, and burials may be proved by production of the register itself or by examined copies, but if a copy is produced it must be shown that the original was in its proper custody, and the law is so laid down in Roscoe's Law of Evidence."

The deposition of W. M. Casey, who stated:

"I am clerk of Petty Sessions for Clonmel Borough, and a commissioner for taking affidavits for the High Court of Justice in Ireland. I am now in my fifty-sixth year. I am a member of the Roman Catholic Church. I have been all my life residing in Clonmel, and have been always a resident in the Roman Catholic Parish of Saints Peter and Paul's. I beg to refer to the baptismal certificate marked 'E' on which I have indorsed my name at the time of swearing hereof. The officiating clergymen mentioned in the said certificate was the Reverent Robert Henebry. I also beg to refer to the marriage vertificate marked 'G,' on which I have indorsed my name at the time of swearing hereof. The officiating clergyman mentioned in that certificate was the Reverend Robert Henebry. I say I was personally acquainted with the Reverend Robert Henebry, and am aware that he was an officiating clergyman in the Roman Catholic Parish of Saints Peter and Paul's Clonmel, aforesaid, in the year one thousand eight hundred

and fifty-three, subsequently, and also prior to the year 1853 as far back as my memory carries me."

It was also shown that the clergyman, who kept the parish register from which exhibit "B" was extracted, was deceased at the time of the taking of the depositions.

The depositions and affidavits read in evidence tend to identify the insured as the same person, who, according to exhibit 'B,' was baptized Annastasia Hackett, on February 29, 1818. If these exhibits were admissible in evidence, then it is conclusive that the insured's warranty as to her age was false, and plaintiff cannot recover. Pedigree, under which head the law writers include birth and marriage, may be proven in various ways; by general repute, by entries in a family Bible, by recitals in family deeds or other family documents, by inscriptions on mural monuments, by official parish registers, and by the register of a church in which entries of baptism are made in the ordinary course of the clergyman's business.

Jutice STORY, in Nicholas v. Webb, 8 Wheat. 326, speaking of this class of memorandums said: "We think it a safe principle that memorandums made by a person in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for others, in case of his death, are admissible evidence of the acts and matters so done." A like ruling was made in Lewis v. Marshall, 5 Peters 470; and in Blackburn v. Crawfords, 70 U. S. 175, the court ruled:

"Independent of statute requiring it to be kept, a baptismal register of a church, in which entries of baptism are made in the ordinary course of the clergyman's business, is admissible to prove the fact and date of baptism, but not to prove other facts, as, e. g., that the child was baptized as the lawful child of the parents, and hence to infer a marriage between them."

In Maxwell v. Chapman, 8 Barb. l. c. 582, the court said:

"The third ground of objection assumes that the register is only evidence of pedigree, in any case. This cannot be so. It is laid down in Greenleaf (vol. 1, sec. 493) that a register of a marriage is evidence of the fact of the marriage, and of the time when it was solemnized. These are all the specific objections taken on the trial, and of course all which can be made the ground of the motion for a new trial. But it was said on the argument that a register was not evidence in this State where there was no statute regulating registers of marriages and making them evidence. But this is a mistake. It is settled that registers are evidence, on principles applicable to this kind of testimony, without reference to any law declaring them to be evidence. 1 Greenl. Ev., 483, 484, 493. See also Stark. Ev., 174, pt. 2, sec. 50; 5 Cowen's Rep. 237; 5 Peters 470."

In Kennedy v. Doyle, 10 All. 161, the records of a hospital were admitted in evidence. This case was approved and followed in the case of Inhabitants of Townsend v. Inhabitants of Pepperell, 99 Mass. 40, where the court ruled:

"A record of the condition and treatment of a patient in a hospital, produced at a trial forty years after its date, by the superintendent of the hospital, as part of a series of records, of which he is the official custodian, purporting to be contemporaneously made by the attending physicians, of all cases there treated, and which it is their duty to make, is admissible in evidence, as a foundation for the opinion of an expert whether it indicates mental disease of the patient, without identifying the person who made it."

Numerous cases decided by the highest courts of other States, holding the same doctrine, might be cited, but we deem the foregoing sufficient to show that the doctrine is supported by the very highest authorities. The doctrine is grounded on the presumption that relatives of a family, having no motive to deceive or misrepresent the truth, would not procure a registration of

the birth, baptism, marriage or death of another member of the family that was untrue; and when this presumption is strengthened by the religious solemnity under which the registration is procured, it seems to us that church registers of these events, when regularly kept by the clergymen, are very persuasive evidence.

In this State in Childress v. Cutter, 16 Mo. 24, it was ruled that church registers are not admissible in evidence except by special statute, unless they are, by the civil law of the country or State where kept, recognized as documents of an authorized and public nature. The Childress case was followed in Morrissey v. Wiggins Ferry Company, 47 Mo. 521. The ruling in these cases, it seems to us, is inconsistent with and is greatly weakened by the later case of Milling Company v. Walsh, 108 Mo. 277, where, at 282, after having reviewed the legislation of the State in respect to the competency of parties to a suit to testify as witnesses in their own behalf, and in respect to private book accounts, the court said: "We think these sections were designed to and do give complete recognition to the rule which then prevailed and now prevails in most of the States and is sometimes called the American rule; namely, that contemporaneous book entries are evidence for as well as against the party by whom they are kept."

The following cases follow the above case: Robinson v. Smith, 111 Mo. 205 (where the rule was applied to books kept by banking corporations); Siligman v. Rogers, 113 Mo. 649, 21 S. W. 94; Walser v. Wear, 141 Mo. l. c. 463, 42 S. W. 928, and Borgess Inv. Co. v. Vette, 142 Mo. 560, 44 S. W. 754, where the rule is said to apply to books kept by the party offering them or by his clerk. Why books of account of daily business transactions, kept by the party offering them, and when, in making the entries, there is the incentive to serve his personal interest, should be admitted in evidence, and the register of the birth or death of a child, regularly made by a

clergyman of a church, whose duty it is to keep the register, and when the motive of the parent procuring the registration to be made is to speak the truth, should be excluded is hardly reconcilable with justice or reason.

The church registers, about which the witnesses testified by deposition, are recognized in Ireland, where they were made, as of sufficient publicity and authenticity to admit them in evidence, and under any of the Missouri decisions, for this reason were admissible here. Solicitor Krean stated, in his deposition, that it is clearly laid down that registers of baptisms and of marriages preserved in church are good evidence of the facts which it is the duty of the officiating minister to record in them and, referring especially to exhibit "G" (register of the marriage of Richard Collins and Annastasia Hackett) and exhibit "B" (register of the baptism of one of their children) said, in his opinion, they would be admissible in evidence in the courts of Ireland. Roscoe says: "Parish registers of baptisms, marriages and births may be proven by the production of the register itself or by examined copies." 1 Roscoe, Nisi Prius Evidence, p. 124.

Our conclusion is the the court properly overruled appellant's objection to the depositions. Appellant further contends that evidence of baptism is not evidence of birth. This is true, but the court will take judicial notice that Annastasia Hackett had to be born before she could be baptized, and if she was baptized February 29, 1818, she was born on some day prior to that date.

It is contended by appellant that the entry of the baptism of Annastasia Hackett is not shown to have been in the handwriting of Reverend J. Baldwin, deceased, (shown to have been the clergyman of the parish at the time the entry purports to have been made). We do not think it was indispensable to the admissibility of the entry as evidence to show that the entry was made in the handwriting of the Reverend

J. Baldwin. It was shown that the register had been kept from time immemorial by the clergymen of the parish, and that it was the duty of the clergyman for the time being to keep the register. From this evidence and proof of the death of the Reverend Baldwin, and that he was clergyman of the parish at the time the register was made, the presumption arises that he did his duty and himself made the entry. Agan v. Shannon, 103 Mo. 661, 15 S. W. 757; State ex rel. v. Bank, 120 Mo. 161, 25 S. W. 372; Guest v. Railroad, 77 Mo. App. 258.

Appellant also contends that the evidence is insufficient to identify the insured as the same person who was baptized as Annastasia Hackett, February 29, 1818. The parish register shows that infants born to Richard Collins and Annastasia Collins (nee Hackett,) were baptized in St. Mary's Parish, thus showing the identity of the name of Annastasia Hackett with that of the insured. This of itself is some evidence of identity of person; but the affidavit of the plaintiff to the proofs of loss put this question at rest, and the contention that these proofs were admissible in evidence for the sole purpose of showing that the requirements of the policy concerning them have been complied with, cannot be allowed to annul or overthrow the sworn admission of the plaintiff in one of these affidavits that her mother, the insured, was the Annastasia Collins, who married Richard Collins in Ireland.

We do not think any of the evidence admitted by the court was erroneously admitted, and affirm the judgment. All concur.